M. C. Gehl Company, Respondent, vs. Brahm, Appellant.

*April 14—May 9, 1922.*

*Mortgages: Deed absolute in form: Equitable character: Presumption: Evidence: Sufficiency: Estoppel: Laches.*

1. Though a conveyance of land absolute in form may in equity be shown to be in reality a mortgage, there is a presumption that it is absolute in fact; and this presumption can only be overcome by clear, unequivocal, and convincing evidence.

2. In an action between a corporation and one of its former officers involving title to real estate, the evidence (set out in the opinion) is *held* sufficient to support a finding that a deed to the lands constituted a mortgage, and that the plaintiff corporation, for which defendant purchased, was entitled to possession.

3. Although the plaintiff corporation had only a land contract with the original owners, it had an equitable interest in the land; and when the defendant, one of its officers, advanced the purchase money and took title in his name as security, he is estopped from denying the corporation's title.

4. The agreement that the conveyance to the defendant was made as security, and the promise to reconvey upon repayment of the purchase price, although resting in parol, create an indebtedness recognized by the defendant sufficient in equity to establish the relation of mortgagor and mortgagee.

5. Plaintiff having promptly asserted its rights to the property on the first occasion that it learned the defendant claimed it, and having pursued its legal remedies to the present time, the fact that the action should have been disposed of long since does not establish that plaintiff has slept on its rights, as the record does not disclose that the fault lay with the plaintiff.

Appeal from a judgment of the circuit court for Milwaukee county: E. B. Belden, Judge. *Affirmed.*

This is an appeal by the defendant, *Peter Brahm,* from a judgment entered in plaintiff's favor, and adjudging that a certain deed of lots numbered 2 to 8, inclusive, in block numbered 6, in Continuation of North Avenue Park, in the Twenty-second ward of the city of Milwaukee, Milwaukee county, Wisconsin, to the defendant, *Peter Brahm,* constitutes a mortgage in the sum of $4,000, and adjudging that

the defendant has a mortgage lien on said real estate for said sum, with interest thereon at the rate of five per cent. per annum from December 1, 1905, and for all taxes lawfully assessed against said premises and paid by the defendant, and for improvements erected on said premises by him, and for insurance paid, and that the plaintiff is entitled to set off against said mortgage indebtedness, taxes, and other moneys expended by the defendant all sums which the latter had received by way of net income from said real estate; that the legal title in and to said premises is in the plaintiff, and that the plaintiff is entitled to the immediate possession thereof; and that the defendant is entitled to enforce his mortgage for principal, interest, taxes, and other expenditures by foreclosure proceedings or by resorting to such other remedies, legal or equitable, as he may be advised.

The evidence shows and the court has substantially found the following facts, to wit: .

That the plaintiff is a domestic corporation organized in April, 1904, and engaged in a general produce, commission, and manufacturing business, and that the defendant, *Brahm,* was a director and the president of the company and the owner of forty out of the eighty-one shares of the capital stock of the company issued, and that the balance of the capital stock was owned by one M. C. Gehl, also an officer and director of the company, and by members of his family, and that said Gehl controlled all the shares of the stock of said company excepting only those owned and held by the defendant; that Gehl and *Brahm* were the only stockholders who took an active interest in the company; that on the 18th day of August, 1904, Gehl obtained an option for a period of four and one-half months, for a nominal consideration, for the purchase of said property from the owners for the sum of $4,200, the property referred to consisting of seven lots on the corner of Thirtieth and Clark streets in the city of Milwaukee, abutting on the railroad track and was principally considered of value by reason of

its available sidetrack facilities. While this option was pend-
ing the owners had an opportunity to make a sale of the
property for $4,000, and they therefore applied to Gehl for
a release of the option, at the same time offering to him the
opportunity to purchase the property for a like amount.
*Brahm* and Gehl then had a conference and discussed the
advisability of the company purchasing this property, the
parties then considering that the same might some day in
the future afford the company a valuable site on which to
conduct its business by reason of its railroad facilities.
*Mr. Brahm* testified on the subject as follows:

"Mr. Gehl came to me and said, 'We want to buy that
property for the company.' I was not inclined to take it.
I said that if he saw anything in it for the company, then
we would take it. So we bought it for the company at that
time. I said I was willing to loan the money for that pur-
chase and the company take a deed and I get a mortgage."

On October 31, 1904, the following agreement was exe-
cuted by the owners of the property:

"Milwaukee, Wisconsin, October 31, 1904.
"Received from the *M. C. Gehl Company,* a corporation,
the sum of $200 to apply as part payment on the purchase
by it of lots numbered 2, 3, 4, 5, 6, 7, and 8 in block No. 6
in the Continuation of North Avenue Park in the Twenty-
second ward, the purchase price of said property being
$4,000, the further sum of $3,800 being payable on or before
December 1, 1904, when a warranty deed and full abstract
of title is to be furnished, showing the said property free
and clear of all legal liens and incumbrances; the purchaser
to pay the taxes for the year 1904.

(Signed)    "GEORGE SCHNEIDER.
"HENRY F. KNUTH."

There was thereupon paid to the owners, by the check of
the company, the sum of $200. When the option was about
to expire the defendant was on a trip out of the city, and
through the efforts of Gehl an oral extension of the option
was obtained for a period of thirty days.

Before the defendant took his trip he and Gehl discussed the matter of raising the necessary funds with which to consummate the transaction, and the defendant expressed his intention of loaning money to the company for that purpose which he held as guardian for his niece. The defendant on this subject testified as follows:

"Before I had gone up North I had a talk with Mr. Gehl about loaning this money. I was trustee of some money, but Mr. Ewens did not want me to use the money, and I said I would sell some of my mortgages and borrow the money to the company."

It further appears that the defendant then suggested that it would be futile to expend money for abstracts and to incur other expenses, and that he would take title to the property in his own name and would furnish title to the company at any time it so demanded; that the company could repay the defendant's loan at any time within a period of three or four years, with interest, and that he would then deed the property to the company, or that he would transfer the title on the demand of the company after payment of amount due.

Thereupon, pursuant to such understanding, the defendant executed and delivered to the company a check for $200, being the amount paid down by it at the time of the execution of the agreement above set forth, and thus the entire amount of the purchase price was advanced by the defendant.

Ewens & Sons, real-estate agents, pursuant to an agreement between Gehl and *Brahm,* shortly thereafter found a prospective purchaser of the property at an enhanced value, and an option was executed and the sum of $250 was paid to the agents on the option. The optionees, however, did not exercise their option, but purchased property elsewhere, and the agents, without the knowledge and consent of the company, returned to the optionees $225 of the option money.

The taxes for the year 1904, assumed by the company, amounted to $64.94, and the company thereupon executed and delivered to the agents aforesaid a check for $39.94, which, together with the $25 option money retained by the agents, covered the amount of the 1904 taxes, and such taxes were thereupon paid by such agents. The agents thereupon presented a statement showing the total amount of receipts and the charges for taxes, extension of abstract, and fees for executing the deed, and a balance due them of $4.50, which balance was promptly paid by the company by its check.

At the end of the year 1905 an inventory of the company's assets was taken, and the defendant at that time presented a written statement, from which it appeared that he was entitled to a credit on the books of the company for the sum of $46.38; and the time for the payment of the first year's interest on the loan of $4,000 having arrived, Mr. Gehl took the statement and entered thereon an item of $200 for interest due the defendant, making the total amount of the bill $246.38, and thereupon credited the defendant with such amount.

In February, 1907, the defendant brought an action against the company to recover the sum of $676.22, which amount included the $200 interest item above referred to, and such suit was thereupon settled by the company by the execution of a judgment note for the total amount, payable in thirty days, and at the expiration of such time the full amount due upon such note was paid by the certified check of the company. While the defendant did not deny that the item of $200 was included in the total amount, it was his contention that the $200 represented a loan and did not represent interest.

On or about the 6th day of November, 1906, while the defendant was absent from the city, Gehl received a telephone communication from one Habhegger, a real-estate agent, by whom he was informed that he, Habhegger, had a

purchaser for *Brahm's* property for the sum of $9,000, and it was on this occasion that Gehl claims he heard for the first time that the defendant claimed to be the owner of the property in question. When the defendant returned to the city, Gehl immediately upbraided him for endeavoring to sell the property without consulting him and for asserting title to the property, he, Gehl, asserting that the property belonged to the company. Here follows *Brahm's* own testimony on the subject:

"The first knowledge I ever had that the company claimed an interest in these lands was after I got back from Ashley in 1906. Then Mr. Gehl said to me, 'Say, that property belongs to the company,' and I said, 'It don't; I carried all the expenses on it, and I don't know anything of it, because I paid the taxes.' "

Gehl then prepared a document which in substance constituted a declaration of trust, and requested the defendant to sign it, which he refused to do. Thereupon Gehl, with the co-operation of the other stockholders in the company, ousted the defendant as an officer and director of the company, and from that time on his active connection with the company ceased. Gehl, in behalf of the company, offered to repay to the defendant the total amount of his loan and interest, or, in the alternative, to permit the defendant to hold the title as security; but the defendant insisted that he was the owner of the property and that he would not entertain either of the propositions.

Before the above rupture between Gehl and the defendant, one Riemer, a real-estate agent, called at the plaintiff's place of business and made inquiries with respect to the sale of the property, and the defendant stated to Riemer that before making any definite arrangements it would be necessary for him to confer with Mr. Gehl, and that he and Gehl and Riemer together discussed the prospective sale, and that it appeared to him, Riemer, that Gehl was the spokesman in the matter. When other prospective purchasers inquired

about the property the matter was discussed with both Gehl and the defendant.

In the year 1906 or 1907 the defendant brought an action against the plaintiff and others, in and by which he claimed that the corporation had fraudulently issued to one Mary E. Gehl ten shares of the capital stock of the corporation without consideration, and that he, the said Gehl, intended to vote or cause to be voted said stock, to the great detriment of the defendant's rights, and, among other things, the defendant prayed for an injunction restraining said Mary E. Gehl from voting said stock and for the appointment of a receiver for the corporation and the winding up of its affairs. In this action the plaintiff herein appeared and served a counterclaim, in and by which it demanded, in substance, the relief prayed for in the instant case. To this counterclaim the defendant herein demurred, upon the ground, among other things, that the same was not properly pleadable in such action, and the trial court overruled the demurrer, from which ruling an appeal was taken to this court, and this court reversed the decision of the lower court and sustained the demurrer in an opinion handed down on September 24, 1907. See *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 112 N. W. 1097.

The cause was thereupon tried in the circuit court, and judgment was entered dismissing plaintiff's complaint in such action, which judgment upon appeal to this court was affirmed on May 2, 1911. See *Brahm v. M. C. Gehl Co.* 146 Wis. 238, 131 N. W. 1135.

It further appears that the real estate in question at no time was entered upon the books of the corporation as an asset, nor was the alleged indebtedness to the defendant entered as a liability, and in this respect it was testified by Mr. Gehl, who had charge of the books of the company, that he did not consider it proper or necessary to keep such a record; however, the evidence shows beyond dispute that in all bank statements and statements to commercial agencies

for credit purposes the property was listed as an asset and that the indebtedness to the defendant was charged as a liability, but that Gehl had made entries upon separate slips of paper showing the property as an asset and the indebtedness as a liability. After the rupture above referred to between Gehl and the defendant, and subsequent to the time when the latter was deposed as an officer and director of the company, and from that time up to the present time, the defendant claimed to be the owner of the property, held possession thereof, exercised acts of ownership over it, and paid the taxes.

For the appellant there were briefs by *Trottman & Trottman* of Milwaukee, and oral argument by *Nelson S. Trottman*.

For the respondent there was a brief by *Churchill, Bennett & Churchill* of Milwaukee, and oral argument by *W. H. Churchill*.

DOERFLER, J. The principal question raised by defendant's counsel, and the one upon which all the questions of law and of fact depend, is involved in the consideration of whether the findings are contrary to the evidence. A determination of this issue involves an analysis and consideration of all of the facts and circumstances detailed in the evidence, the existing physical facts, the relationship of Gehl and the defendant to each other, and the mutual relationship between each of them and the plaintiff. The main inquiry, therefore, revolves about the subject of intent. If it can be shown, after consideration of all of the matters above referred to, that it was the intention of the parties at the time the alleged transfer of the property was made that such transfer should operate not only as a conveyance absolute in form but also in fact, then the lower court in its findings committed error and the judgment must be reversed; however, if under the legal proof required in cases of this kind it is shown that such transfer was made

to the defendant absolute in form but in reality as a security, in order to secure him for the money advanced by him on the purchase of the property, then the judgment of the trial court must be affirmed.

"Any conveyance of land absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase, or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage. . . . The principle which underlies this doctrine is the fruitful source of many other equitable rules: that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him, and which he had knowingly accepted, merely as a security, and therefore in reality as a mortgage." 3 Pomeroy, Eq. Jur. (4th ed.) § 1196.

This doctrine so clearly laid down by the author quoted has been in substance approved not only by the courts of last resort in nearly all of the jurisdictions in this country, but has been repeatedly declared and approved by this court. See *Polly v. Gumney,* 157 Wis. 362, 147 N. W. 356; *Smith v. Pfluger,* 126 Wis. 253, 105 N. W. 476; *Schneider v. Reed,* 123 Wis. 488, 101 N. W. 682; *Beebe v. Wis. M. L. Co.* 117 Wis. 328, 93 N. W. 1103.

In a case of this kind, however, where a conveyance is absolute in form, a presumption exists that it is absolute in fact, and such presumption can only be overcome by evidence which is clear, unequivocal, and convincing. 3 Pomeroy, Eq. Jur. (4th ed.) § 1196, and cases there cited.

With this presumption in mind, and with the rule as to the degree of evidence requisite to overcome this presumption, we will now briefly consider the material facts and circumstances of the case as shown by the evidence, with the view of determining the correctness of the findings.

In August, 1904, Gehl held an option on this property, and before the time provided in the option expired, pur-

suant to a conference between Gehl and the defendant, it was understood and agreed that the property in question, by reason of its location and its railroad trackage facilities, might afford a valuable site for the company's business. Gehl thereupon surrendered his option, and the contract set forth in the preceding statement of facts was thereupon executed.   By virtue of such contract the company acquired an equitable interest in the property, exclusive of any individual interest of either Gehl or the defendant.   The purchase of the property constituted a good risk, and for speculative purposes was not only valuable by reason of its location with the ultimate view of profit on a sale, but was particularly valuable to the corporation for business purposes.   That the judgment of the moving parties was wise is established by the evidence beyond controversy, for from the very date when the company acquired its interest inquiries and offers for a sale were submitted, upon varying terms, all involving a handsome return.

From the time that the equitable interest became vested in the plaintiff, both Gehl and the defendant were in duty bound in law to so discharge their duties towards the corporation, with respect to this property, as not to result in an individual benefit and to the detriment of the corporation. Each occupied a relationship to the corporation which required the exercise of good faith and which precluded any desire to prostitute their fiduciary obligations in order to acquire individual gain.   As to each, his primary duty was towards the corporation.   Neither one could consistently serve two masters.

While Gehl surrendered his individual interest for the benefit of the corporation, there is nothing in the evidence shown anywhere by which it can rightfully be charged or even suspicioned that he intended to secure individual profit at the expense of the corporation which he represented as an officer and a director; on the contrary, every effort to secure this property for the benefit of the corpora-

tion was exerted by him.   This constitutes a monumental fact in this case, not only showing fidelity to his trust while acting in an official capacity, but impressing his testimony with an air of credibility which, we regret to say, does not exist with respect to the defendant.

Ordinarily in a transaction of this kind the security is in the form of a mortgage.   When the plaintiff acquired its interest in the property the relations of the defendant and Gehl were harmonious and congenial in the highest degree, and the evidence shows conclusively that at that time neither of said parties was actuated by ulterior motives, and that they had implicit confidence in each other.   It is only where the highest degree of friendship and business relationship exists, where men consider an obligation as binding and as strong as a written bond, that they will permit such relationship to rest upon oral promises.

. The acts of the parties at the time the plaintiff acquired its interest, and immediately thereafter, are of strong probative weight in determining where the truth lies in this controversy.   Up to the time when the agent, Habhegger, produced a purchaser for this property for the sum of $9,000 all prospective sales were the subject of mutual conferences between the two parties who represented the entire interests of the corporation.   When Riemer called at the plaintiff's place of business the defendant called in Gehl, and in the discussion that ensued Gehl was the real spokesman.   Before Ewens & Sons accepted $250 on an option a like conference ensued, and in fact numerous conferences of a similar nature were had, all strongly indicative not of individual ownership but of corporate ownership.   When Ewens & Sons rendered their statement, which was approved by both Gehl and the defendant, the corporation issued its check for $4.50 to pay the notarial fee in making out the deed and the extension of the abstract, and it was established beyond dispute that the obligation of the company to pay the taxes for 1904 was met, with the knowledge of the defendant,

by the issuance to Ewens of a check of the company in payment of the taxes for that year.

In the month of December, 1905, being about one year after the deed had been executed to the defendant and at a time when the company made out its annual inventory, the defendant presented his bill for moneys due him amounting to $46.38, and it is undisputed that at that time Gehl credited the defendant with $246.38, which, as Gehl claims, included $200 for interest due to the defendant on his mortgage. This item of $200 was subsequently included in a judgment note to the defendant and was paid. Giving full credit to defendant's claim, which is rather hazy and not adequately explained, that said $200 represented a loan, nevertheless the fact that such credit is given at the very time when the annual interest became due, particularly in view of the other facts and circumstances in the case, is powerfully significant and indicative of the correctness of Gehl's claim that such credit was given for interest.

When Habhegger, the agent with whom the defendant had secretly placed the property for sale at a greatly enhanced price, informed Gehl of such fact, and when the defendant upon his return to the city was confronted with his act, and when Gehl asserted title in the company, the defendant, according to his own evidence, made the following reply: "I carried all the expenses on it, and I don't know anything of it, because I paid the taxes."

The declarations of a party, made at a crucial time, when the important issue apparently for the first time is raised, are always of great aid to the court in arriving at a proper solution. No surprise is made manifest by the defendant's declaration. Gehl's attention was not directed to any specific agreement under and pursuant to which it was claimed by the defendant that the title became absolutely vested in him. Such declaration amounted to a mere denial and an excuse by way of justification for his attitude, based upon his claim that he had paid the expenses and the taxes on

the property, which declaration, at most, was only partially true. True in so far as he had advanced the purchase money; untrue as to his claim that he had paid the ordinary expenses of the sale and the taxes; for under the uncontradicted evidence the taxes for 1904 had been paid by the company, and the incidental expenses on the sale had likewise been paid by the company. Such a declaration is not persuasive of defendant's claim that the title was absolutely vested in him. Even before the agreement of October 31, 1904, was executed, the defendant, according to his own testimony, stated that he was willing to loan the money for the purchase and the company to take a deed and to execute to him a mortgage to secure him for the purchase price. When the October agreement was about to expire and before the defendant took his trip to the North, according to his own testimony, he expressed a willingness to Gehl that he would either use the money which he held in trust for his niece or would raise money by the sale of some of his securities, and would loan the money to the company upon a mortgage on the property. By virtue of this evidence, coming from the defendant himself, and considering the same in connection with all the other strong outstanding facts and circumstances heretofore detailed, the conviction firmly fastens itself upon one's mind that the plaintiff's contention in this case is correct.

Gehl, in behalf of the company, offered to reimburse the defendant for his loan and expenses, which offer was met by a refusal and an assertion of title in himself. This created a situation which avoided the necessity on plaintiff's part of making any further specific offers.

The real estate was listed by the company in statements made to banks and commercial agencies for the purpose of securing credit. This constitutes an assertion of title on the part of the corporation, and the mere fact that the property was not carried upon the books of the company as an asset, or that the company failed to charge itself with the

amount of the indebtedness as a liability, is of little signif-
icance in view of the fact which has been made manifest that
Gehl was not an expert bookkeeper.

It must be admitted that the company failed to pay the
taxes accruing subsequent to the year 1904. Had the com-
pany paid such taxes, the issue involved in this case would
be proven in plaintiff's favor beyond any controversy what-
ever. However, in dealing with parties to a litigation we
cannot lose sight of the fact that they are not infallible
but are human. The vitally important factor, however, re-
mains, upon consideration of the testimony as a whole, of
the outstanding facts and circumstances, of the physical
facts, of the relationship of Gehl and the defendant toward
the corporation, that this property was not only purchased
by the corporation but that it was the original intention, as
expressed by the defendant himself, that he would loan the
purchase money to the company and take a mortgage as
security.

We therefore conclude that under the rule as above laid
down the evidence is sufficient to sustain the findings.

Defendant's counsel contend that at the time of the exe-
cution of the deed the plaintiff had no mortgageable inter-
est in the land. It had a valid outstanding land contract,
which contract was enforceable by specific performance on
the part of the vendee (*Cheney v. Cook*, 7 Wis. 413; *Doc-
ter v. Hellberg*, 65 Wis. 415, 27 N. W. 176; *Heins v.
Thompson & Flieth L. Co.* 165 Wis. 563, 163 N. W. 173),
and which was also enforceable on the part of the vendors.
*Heins v. Thompson & Flieth L. Co., supra; Douglas v.
Vorpahl,* 167 Wis. 244, 166 N. W. 833.

The plaintiff had an equitable interest in the land by vir-
tue of its contract, and this interest has never been expressly
surrendered. It is true that the transfer was made directly
by the owners to the defendant, but such transfer was made
with the understanding and pursuant to the agreement that
the defendant would take title as security. This being so,

the defendant is in equity estopped from claiming title as against the plaintiff and is estopped from denying title in it.   The apparent legal title was placed in defendant at his own solicitation and request, with the understanding that he was to hold the same as security.   This is an express recognition of plaintiff's title; and while of record the title rested in the defendant, the legal title at all times was in the plaintiff, and the lower court by its judgment so adjudged.   To vest title under these circumstances in the defendant would permit him to take advantage of a situation brought about in a large measure through his own efforts and would operate as a fraud upon the plaintiff.   This a court of equity cannot and will not tolerate.   The equitable doctrines involved in this case are intended to prevent fraud and not to perpetrate fraud.

It is further contended by defendant's counsel that the existence of a debt from plaintiff to defendant was not established, and that if the relation is one of mortgagor and mortgagee such relation must be predicated upon a debt. Prior to the execution of the deed the plaintiff, by virtue of its contract, had an equitable interest in the real estate. It has heretofore been shown that the defendant agreed to advance to plaintiff the necessary money with which to pay for this property in full, and that as security for the repayment of the money so advanced he would take a mortgage. It also appears that instead of giving the defendant, as was originally contemplated, a mortgage, it was agreed that the defendant would take an absolute transfer as security, with the condition attached that he was to convey such property to the plaintiff upon the payment of the indebtedness. This indebtedness was to be discharged at any time when the plaintiff was ready to pay the money, when it saw fit to sell the property or to build thereon, and in any event during a period not to exceed three or four years.   True, the indebtedness was created by an oral agreement, as was also the obligation on the part of the defendant to convey the

title to the plaintiff when such indebtedness was paid. Pursuant to this oral agreement, and not otherwise, the defendant received the title to this property as security. That being established, it amounted to a recognition on his part of plaintiff's indebtedness. As has heretofore been shown, the agreement that the conveyance was made as security and the promise to reconvey upon the payment of the indebtedness may rest in parol, and the indebtedness itself may likewise be established by oral testimony.

What is said in 27 Cyc. on page 979, under the subject "Advance of purchase money for vendee's benefit," is strictly applicable here:

"If a person who has contracted for the purchase of land procures another to loan him the money necessary to make the payments, or to advance it to him, and has the deed made to the latter, with an agreement that he will convey the title to the former on repayment of the amount advanced, the transaction will amount to an equitable mortgage if it was the understanding and intention of the parties that the one should become debtor to the other for the money advanced, and that the land should be held merely as security for this debt. If this was their contract, the form in which they may have cast the agreement is immaterial. It is not necessary that the agreement to reconvey should be under seal, or even that it should be in writing; a mere oral agreement will be sufficient in equity."

Defendant's counsel further make the claim that plaintiff's claim is stale in equity; that it has slept upon its rights; and that therefore equity ought not to afford it any relief. The evidence clearly establishes the fact that the plaintiff immediately asserted its title to the property upon the very first occasion when Gehl learned that the defendant claimed title in himself. This was followed by litigation in which the plaintiff, as in the instant case, asserted its title, and shortly after the dismissal of defendant's action, in accordance with the decision in *Brahm v. M. C. Gehl Co.* 146 Wis. 238, 131 N. W. 1135, the present action was begun, which,

after the lapse of many years, ripened into a judgment in plaintiff's favor in the circuit court, and is now before this court on appeal. It would appear that the present action ought to have been disposed of long before this, but we cannot say, from a review of the record, that the fault, if any, lies with the plaintiff; on the contrary, the record affirmatively discloses that considerable delay, covering a long period of time, was occasioned by the defendant. The outstanding fact pertinent to the subject under consideration is the prompt assertion of title and the pursuit on plaintiff's part of its remedies from that time on until the present, in accordance with advice of counsel.

We therefore hold that the judgment of the circuit court must be affirmed.

*By the Court.*—It is so ordered.