SEIFERT, Plaintiff, vs. NORTHWESTERN NATIONAL INSURANCE COMPANY and another, Defendants. [Two appeals.]

*December 11, 1925—March 9, 1926.*

*Insurance: Replacement of policy by agent: Failure of insured to surrender original policy: Evidence: Sufficiency.*

In an action to recover on a fire insurance policy, where the insured had accepted a policy in another company which the agent tendered as being a replacement of the one then held, although the insured did not actually surrender the former policy, the evidence is *held* to sustain a finding that he authorized the cancellation of the former policy and its replacement by the one he accepted.

APPEALS from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

This is an action to recover on an insurance policy. Trial was had before the circuit court and a jury. There was a special verdict, and judgment was rendered thereon in favor of the plaintiff and against the *North River Insurance Company,* and dismissing the complaint against the *Northwest-*

ern National Insurance Company. The North River Insurance Company appealed, and the plaintiff filed a cross-appeal from the judgment dismissing the action against the Northwestern National Insurance Company.

For the appellant Seifert there was a brief by Winter & Winter of Shawano, and oral argument by P. J. Winter.

For the appellant North River Insurance Company there were briefs by Minahan, Minahan & Duquaine of Green Bay, and oral argument by Eben R. Minahan.

For the respondent Northwestern National Insurance Company there was a brief by Eberlein & Larson of Shawano, and oral argument by Albert S. Larson.

The following opinion was filed January 12, 1926:

CROWNHART, J. Plaintiff was the owner of a restaurant and ice cream business in Shawano. McGreaham was an insurance agent and represented the two defendants as such agent. McGreaham solicited insurance from the plaintiff, and wrote policies aggregating $5,000 in the Northwestern National Insurance Company on plaintiff's property. These were in force November 15, 1923, when the plaintiff's property was burned, and were paid in full.

About a year before the fire, McGreaham, who was taking his meals at the plaintiff's place, urged plaintiff to carry additional insurance, and plaintiff authorized McGreaham to write $4,500 more. McGreaham wrote the insurance with the Northwestern National Insurance Company, and delivered the policy to the plaintiff. Plaintiff paid the premium. McGreaham did not remit the premium to the Northwestern National, and never made a daily report of the policy, as required by the insurance company. A representative of the company called upon McGreaham about a month before the fire and examined his insurance register. He noticed the amount of insurance carried on plaintiff's property, and suggested that his company was carrying too

heavy a line on that property. McGreaham said that the last policy for $4,500 had been canceled. Thereupon the representative wrote on the register a memorandum that the policy was "canceled flat." This meant the policy was canceled with no return premium. This was on October 15, 1923. The representative of the company had no other knowledge of the situation than that gained from the register and from McGreaham's statement. On October 29, 1923, McGreaham made out a policy to the plaintiff in the *North River Insurance Company*, and on that day delivered the policy, inclosed in an envelope, to the plaintiff at his place of business, and said, according to plaintiff's testimony, "Here is your policy." Plaintiff said he could not remember just what more was said, but McGreaham testified:

"When I took this *North River* policy to *Seifert*, I said, 'Here is the policy to replace the $4,500 policy of the *Northwestern National.*' I asked him for the *Northwestern National* policy and he said he didn't know just where it was, he thought it was up in his safe, he was busy and would get it some other time. I remember that."

Plaintiff was busy waiting on customers, and threw the policy into a basket behind the counter and paid no further attention to it. His wife later took the policy up to their rooms over the restaurant, where the policy was burned at the time of the fire. The plaintiff had told McGreaham that he wanted him to look after his insurance and keep him insured as his policies ran out. He knew nothing about the companies in which he carried insurance, and relied upon McGreaham to protect him. He had never discussed with McGreaham the replacing of the *Northwestern National* policy in the *North River Company*. McGreaham did not report to the *North River Company* the issuance of this policy until two days after the fire. He then reported the fire and sent in the premium by check, which was cashed by

the company. After the fire representatives of the two companies came to Shawano, and the situation here stated developed. Both companies refused to pay the amount of the policy, each claiming that the other was liable.

There is no dispute but that the fire was an "honest fire," and that the plaintiff is entitled to the insurance from one or the other of the companies. The sole question in dispute is as to which company should pay the loss. The matter was submitted to the jury, and the following special verdict rendered:

"(1) Did the plaintiff, *Seifert,* at any time prior to the fire in question, authorize Chalmers McGreaham to accept a cancellation of any policy he had received and had possession of? *A.* Yes.

"(2) On or about October 29, 1923, did the plaintiff, *Seifert,* agree to deliver up to Chalmers McGreaham policy No. 286 issued by the *Northwestern National Insurance Company* for the policy of the *North River Insurance Company? A.* Yes."

We have examined the record with considerable care, and have come to the conclusion that the evidence sustains the verdict. There are no serious questions of law involved, and we do not deem it necessary to set out the evidence in detail. McGreaham was fully authorized to issue policies in either company, in his discretion. His failure to make reports or remittances was not the fault of the plaintiff. He was authorized by the plaintiff to write the insurance in companies of his own selection, and to keep the plaintiff insured in the amount of $9,500. He had the right to cancel the policy in the *Northwestern National Insurance Company* and to write a policy in the *North River Company* in its place. This he did. The plaintiff acquiesced in the replacement of insurance by acknowledging and keeping the policy. It was not so clear that he fully understood the nature of the transaction, and he did not actually surrender the *Northwestern National* policy, but it is clear that he relied upon the agent, McGreaham, to keep him insured in

companies selected by McGreaham, and that he was ready and willing to comply with any request of McGreaham to surrender the *Northwestern National* policy upon the issuance of the policy in the *North River Company.*

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on March 9, 1926.