HOMELAND INSURANCE COMPANY OF AMERICA, Appellant,
vs. CAROLINA INSURANCE COMPANY, Respondent.*

*March 6—April 8, 1952.*

---

* Motion for rehearing denied, with $25 costs, on June 3, 1952.

For the appellant the cause was submitted on the brief of *John E. Krueger* of Milwaukee.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edward H. Borgelt* and *Wayne J. Roper* of counsel, all of Milwaukee, and oral argument by *Mr. Roper.*

MARTIN, J. The principal question on this appeal is whether the Carolina policy was in force at the time of the loss, and this depends upon whether Dobbert had authority to cancel the policy, waiving the five days' notice, and substitute the policies of the Homeland Insurance Company and the other two companies.

According to the testimony of Mr. Cohen, Mr. O'Connell was instructed to get $100,000 use-and-occupancy insurance and to keep the mill insured for that amount; O'Connell was

free to place the insurance in whatever companies he saw fit so long as he kept the mill continually insured up to that amount.

O'Connell wished to place the second $50,000 coverage in the Carolina Insurance Company, but instructed Dobbert that if the Carolina did not want to accept the risk, Dobbert should place the insurance elsewhere.

There is, therefore, credible evidence to sustain the trial court's finding that Dobbert had authority to waive the notice, cancel the Carolina policy "flat," and substitute the other policies. Obviously, the five days' notice requirement is for the protection of the assured, and Dobbert, having been advised by O'Connell that the assured was relying on him to keep the mill insured, provided that protection by writing the substitute policies. When a state agent for an insurance company is clothed with the highest authority to act in behalf of the assured, a policy countersigned and issued by him is effective immediately. Thus, when the appellant's policy was issued by Dobbert, together with the others, the coverage on the property for use and occupancy was $100,000, the amount demanded by the assured. The five-day notice could therefore be of no benefit to the assured. More than $100,000 coverage was not contemplated by the parties. Dobbert not only had authority to waive the five-day notice; it was his duty to do so.

This court has held that under these circumstances a policy may be effectually canceled even though the assured is not notified, *Schauer v. Queen Ins. Co.* (1894), 88 Wis. 561, 60 N. W. 994; and has recognized the practice of canceling a policy "flat," that is, cancellation without the payment of premium, *Seifert v. Northwestern Nat. Ins. Co.* (1926), 189 Wis. 305, 206 N. W. 832.

Courts in other jurisdictions have so held. In *Rose Inn Corp. v. National Union Fire Ins. Co.* (1932), 258 N. Y. 51, 54, 179 N. E. 256, it was said:

"It is a principle of almost universal acceptance that where an assured has applied for insurance to an agent, having authority to write policies for many companies, has left to the agent the selection of the companies, with instructions to maintain the insurance in an amount stated, and the agent has undertaken so to act, the agent, upon notice from his companies to cancel, has power to waive for the assured the five-day period of cancellation, to cancel the policies at once, and immediately to write new policies in other companies for the assured, so that the new policies become at once effective."

To the same effect is *Insurance Co. of North America v. Burton* (1931), 147 Okla. 112, 115, 294 Pac. 796:

"There is a well-established rule that, where an owner constitutes the agent of a fire insurance company his agent to keep the property insured with power to select the insurer or insurers, such agency carries with it the power to cancel a policy without notice to the insured and substitute therefor a policy in another company, as he may be the agent for the insured for such purpose, and as such, may, for the insured, waive notice."

"Many cases hold that an agent of fire insurance companies to issue their policies may also be constituted by the insured his agent to receive the policies, and to keep and care for them, with plenary power to keep the property insured in accordance with general directions of the insured, and attend to all renewal, cancellation, and replacement of insurance, without consulting the assured in respect to particular policies or other details." *Kerr v. Milwaukee Mechanics' Ins. Co.* (8th Cir. 1902), 117 Fed. 442, 447.

The cases relied upon by appellant do not present a comparable set of facts. In *John R. Davis Lumber Co. v. Hartford Fire Ins. Co.* (1897), 95 Wis. 226, 234, 70 N. W. 84, the agent's authority was limited to the procurement of the policies, and the court held that service of the notice of cancellation upon him was ineffectual, although it recognized that under other circumstances a broker "may be so clothed

with authority as to have full power to act for the insured in canceling, as well as procuring, policies." In *Wicks Bros. v. Scottish Union & Nat. Ins. Co.* (1900), 107 Wis. 606, 608, 83 N. W. 781, the court conceded that "the parties to an insurance contract may agree upon terms of cancellation different from those stipulated in the policy," but found no facts establishing the existence of any such agreement. In *Gabriault v. Genske* (1935), 219 Wis. 383, 263 N. W. 86, proper notice had been given to the assured, but the cancellation was held not to be effective because the company had not returned the unearned portion of his premium. The case of *Liner v. Mittelstadt* (1950), 257 Wis. 70, 42 N. W. (2d) 504, is likewise distinguishable.

A further argument is made by appellant to the effect that in canceling the Carolina policy "flat," charging no premium for the period between January 31st and February 15th when the respondent company admittedly insured the mill, Dobbert in effect gave a rebate to the assured in violation of the provisions of sec. 201.53 (2), Stats. We see no merit in this argument. As stated above, the practice was apparently approved in the *Seifert Case, supra,* but in any event this issue was not raised in the court below and cannot now be raised.

It is not disputed that immediately after February 15th the appellant knew of the issuance of its policy by Dobbert; that it received and retained the premium paid by the assured; that it did not question the risk or attempt to cancel the policy before February 29th. The policy was therefore in full force and effect at the time the loss occurred, and appellant was liable thereunder for its prorata share of the loss.

In the agreement between the four insurance companies each reserved the right to litigate its liability. As was said in *Liner v. Mittelstadt, supra* (p. 80):

"The device of the loan, rather than an immediate payment of money as insurance, to avoid prejudice to the rights of parties until doubtful questions may be resolved has had the commendation of the supreme court of the United States in the opinion of Mr. Justice Brandeis appearing in *Luckenbach v. McCahan Sugar Co.* (1918), 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170."

Appellant has pleaded the facts respecting the agreement in its complaint and has presented the question of its liability as against that of the respondent. Since the Carolina policy was not in effect on February 29th, appellant's proper share of the loss, as the record shows, was $10,200, of which it paid $5,100 to the assured under the agreement referred to. The trial court was therefore correct in awarding damages of $5,100 to the respondent company on its counterclaim.

*By the Court.*—Judgment affirmed.