MASLOWSKI and wife, Respondents, v. BITTER, Appellant.

*December 1, 1960—January 10, 1961.*

The cause was submitted for the appellant on the brief of *William R. Gold* of Milwaukee, and for the respondents on the brief of *Elliot N. Walstead* of Milwaukee.

FAIRCHILD, J.   Appellant Bitter challenges the sufficiency of the evidence to support the finding of the court concerning the substance of the agreement reached June 7th. He also argues that even if the intention of the parties on June 7th was as found by the court, the subsequent events require a different judgment as a matter of law.

1. *Sufficiency of the evidence.* In the first half of 1957, Maslowski, a real-estate salesman, worked for Bitter, a broker.[1] Before June 7th, Bitter had made nine loans to Maslowski, totaling $1,400. Each was evidenced by a note and the check for each loan bore an indorsement referring to the corresponding note. On the evening of June 7th, Bitter, Maslowski, and Bitter's son were at Bitter's office. Maslowski said he was going to quit and Bitter asked about the money Maslowski owed. It is undisputed that Bitter returned the $1,400 of notes to Maslowski and gave him a check for $120 payable to both Maslowskis and bearing a typed indorsement as follows: "Purchase of: To apply on Sawicki—Maslowski property, Cedarburg, Wisconsin, lot 6, block 18." A paper was typed by Maslowski or by Bitter's son, signed by Maslowski, and given to Bitter. Bitter did not produce this paper at the trial, and his son did not testify.

There was direct conflict in the testimony of Bitter and Maslowski. Bitter testified that when he asked about the $1,400 Maslowski owed, Maslowski offered to sell a half of his interest in the Cedarburg land for $1,520; that the paper signed by Maslowski was a receipt for $1,520. Maslowski testified that he said he would stay to complete certain deals, but would need money; that Bitter agreed to advance money

[1] See *Maslowski v. Bitter* (1959), 7 Wis. (2d) 167, 96 N. W. (2d) 349.

if Maslowski would give security for the entire debt; that the paper he signed said he still owed the $1,400 represented by the notes, plus the $120 advanced that evening.

Other facts tending to corroborate one version or the other, depending upon the inferences drawn, are substantially as follows:

*The subsequent written instruments:* The Maslowskis executed an assignment to Bitter of one half their interest in the Cedarburg land. It recited a consideration of $1,520, contained nothing to suggest an intention that the assignment was to secure a debt, was dated June 7th but executed June 8th. Maslowski testified that Bitter sent Bitter's father and son to the Maslowski home on June 8th; that Mr. Bitter, Sr., said that the paper signed the night before was inadequate, and he had something else for Maslowski to sign; that the Maslowskis then signed the assignment. On June 14th, the Maslowskis executed a quitclaim deed to Bitter conveying an undivided one-fourth interest in the land. The deed contained an acknowledgment of receipt of $1 and other good and valuable consideration, and contained nothing to suggest that it was given to secure a debt. It was drawn by a lawyer, then representing Maslowski in another matter, but Maslowski testified that it was Bitter who asked the lawyer to prepare it; that Bitter told Maslowski that the paper already signed was inadequate; that after having refused at first, Maslowski and his wife did sign it. Maslowski testified that there was no conversation about changing the agreement they had previously reached.

*The value of the property:* There was expert testimony that the Cedarburg real estate was worth from $25,000 to $30,000. It was incumbered by a mortgage of $5,700. There was evidence that a third party had offered to purchase the property for the equivalent of approximately $25,000, but that the offer had been rejected by Maslowskis' co-owner. These facts suggest that $1,520 would be inadequate for the pur-

chase of a quarter interest. Inadequacy of the amount paid tends to show that a transaction of this type is a mortgage and not a conveyance.[2] On the other hand, there was a dispute between Maslowski and his co-owner, Sawicki, which undoubtedly affected the salability of his interest on June 7th. On the same date, Maslowski had commenced an action against Sawicki and his wife, seeking to resolve the dispute. Trial took place in December, 1957, and judgment in Maslowski's favor was entered July 8, 1958.

*Payment of interest and taxes:* Maslowski paid $350 to apply on the outstanding mortgage. He and Sawicki paid taxes and interest. Bitter paid nothing toward these items. This conduct was more consonant with the view that Bitter was a mortgagee than with the view that he was a part owner.

A deed, though absolute in form, may be shown by parol to have been intended as security and, between the parties, will have the effect of a mortgage.[3]

The evidence that a deed was intended as security must be clear and convincing.[4]

The county court apparently believed Maslowski rather than Bitter, where their testimony was in conflict, and drew the inferences which corroborated Maslowski's version. With the conflict so resolved by the trier of the facts, we cannot say as a matter of law that the evidence did not meet the standard of being clear and convincing. Neither can we say that the finding by the county court was against the great weight and clear preponderance of the evidence.

Appellant Bitter argues that this is a case where reformation of a written instrument is sought, and that Maslowski

---

[2] 5 Tiffany, Real Property (3d ed.), p. 264, sec. 1396. See Anno. 90 A. L. R. 953.

[3] *Kent v. Agard* (1869), 24 Wis. 378; *Brinkman v. Jones* (1878), 44 Wis. 498, 514; *Acme Brick Co. v. Jacobi-Erdman, Inc.* (1940), 235 Wis. 539, 292 N. W. 453.

[4] *M. C. Gehl Co. v. Brahm* (1922), 177 Wis. 222, 230, 187 N. W. 1011.

must establish either mutual mistake, or mistake on one side and fraud on the other. This view has been supported in some jurisdictions other than Wisconsin. Other courts and writers have, with varying explanations, recognized an exception to the parol-evidence rule which permits proof by parol that a deed was intended as security only.[5]

In one opinion, this court explained that an intended mortgage will be given the effect of a mortgage whether there be one instrument with an absolute grant and a defeasance clause, two instruments, one an absolute grant and the other containing a defeasance clause, or an instrument making an absolute grant and an unwritten defeasance clause.[6]

Probably the exception involves judicial recognition that for various reasons parties do use deeds to secure indebtedness with some frequency, and that the policy considerations underlying the parol-evidence rule are not sufficiently valid in the case of a deed to deny an opportunity to establish such purpose.

Appellant Bitter also argues that the county court did not require the evidence on behalf of the Maslowskis to be of sufficient quality and convincing power. This argument is based upon the court's use of the phrase "preponderance of evidence" in its memorandum opinion. That phrase was used, however, only with reference to the evidence showing the value of the property. In the portions of the opinion where the court referred to the Maslowskis' having the burden of proof that the deed was intended as security, no such reference was made.

2. *Whether the deed given June 14th must supersede the agreement of June 7th.* Appellant Bitter argues, in effect, that the deed given June 14th was either the culmination of negotiations, of which conversations on June 7th were only

[5] See 5 Tiffany, Real Property (3d ed.), p. 257, sec. 1395.
[6] *Brinkman v. Jones* (1878), 44 Wis. 498, 514.

a part, or that the deed represented a modification of the understanding reached on June 7th; that everything prior to June 14th merged in the giving of the absolute deed. The court termed the assignment and deed "supplemental" to the agreement of June 7th. The issue at this point is whether the deed was given in further performance of the agreement of June 7th that half of Maslowski's interest in the real estate could be held as security for the debt, or whether, in the absence of any agreement contemporaneous with the deed that it was to constitute security only, the agreement on June 14th was different from the common intention of the parties reached June 7th. Maslowski's testimony suggests that the assignment and, later, the deed were executed because Bitter was dissatisfied with the form in which the security had been given rather than that he was dissatisfied with the understanding the parties had reached. Maslowski testified that there was no conversation after June 7th with reference to changing the agreement. Under the circumstances, we conclude that the county court could properly consider the assignment and deed as performance by Maslowski of the agreement to give security for a debt rather than modification thereof.

*By the Court.*—Judgment affirmed.