KOPPERUD, Plaintiff and Appellant, v. CHICK, Defendant and Respondent: ANCHOR CASUALTY COMPANY, Impleaded Defendant and Appellant.*

*April 28—June 1, 1965.*

* Motion for rehearing denied, with costs, on September 9, 1965.

For the appellants there were briefs and oral argument by *John S. Coleman* and *Patrick R. Doyle,* both of La Crosse.

For the respondent there was a brief by *Petersen, Sutherland, Axley & Brynelson* of Madison, and oral argument by *Robert J. Sutherland.*

HALLOWS, J.   The sole question before us is whether the plaintiff is the real party in interest in this suit against a third party or has lost that status by reason of entering into the loan agreement with his insurer. The loan receipt and agreement detailed the claim, disclaimed liability, and re-

cited the reasonableness of compromise settlements, the financial inability of the plaintiff, and the casualty company's desire to make a loan for the purpose of making the settlements. The agreement provided the loan did not satisfy any obligation of the company to the plaintiff and was repayable only to the extent of recovery by the plaintiff from third parties by way of contribution, indemnity, subrogation, or other means. The plaintiff agreed to commence all actions requested by the casualty company but at its expense and under its control and not to settle or compromise any claim without the consent of the casualty company. All moneys collected by the plaintiff were to be turned over without demand to the casualty company and applied in satisfaction of the loan. The agreement was silent as to interest and provided the plaintiff waived no rights against the casualty company and the casualty company did not obtain any right to prosecute any claim in its own name against strangers to the agreement and waived any right of contribution, indemnity, or subrogation, except its right to have the loan repaid to the extent of any recovery by the plaintiff.

The casualty company does not seriously argue this loan agreement creates in fact a customary loan but it does contend the agreement constitutes a valid and legitimate means of settling claims and lawsuits in an expeditious manner and of avoiding extensive litigation. These purposes it is argued justify this court considering the plaintiff the real party in interest in fact as well as in form within the meaning of sec. 260.13, Stats., which provides every action must be prosecuted in the name of the real party in interest.

Whether or not the plaintiff is to be considered the real party in interest in this suit to be indemnified by Chick depends upon the nature of the transaction between the plaintiff and the casualty company. If the transaction was a

payment although called a loan by the casualty company, the plaintiff is not the real party in interest because any rights he had against Chick belonged to the casualty company by virtue of subrogation. The form of a transaction if inconsistent with its substance is not controlling. This court on other occasions has construed the form of documents to be overridden and controlled by the substance of the transaction. Two notable examples are construing a warranty deed as a mortgage and of joint tenancies in form as not being joint tenancies or as being tenancies in common. *Barr v. Granahan* (1949), 255 Wis. 192, 38 N. W. (2d) 705; *Maslowski v. Bitter* (1961), 12 Wis. (2d) 337, 107 N. W. (2d) 197; *Estate of Michaels* (1965), 26 Wis. (2d) 382, 132 N. W. (2d) 557.

The loan receipt and agreement has a proper and legitimate place in the adjustment of losses under insurance policies but the device is unavailable and improper in this state to cover up a suit based on subrogation or to obtain the same results as the enforcement of subrogation rights. The court will not recognize the transaction as a loan if the insurer's right to demand repayment of the loan is in substance its right to subrogation parading in disguise. However, to expedite prompt settlement of claims against insurance companies the loan-agreement device has been recognized when payment would be prejudicial to the insurance company under the terms of its policy.

The leading case upholding the validity of a loan-receipt agreement is *Luckenbach v. McCahan Sugar Co.* (1918), 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170. This case represents a class of cases in which the device has been used with approval to preserve a policy defense and thus to avoid giving carriers and others the benefit of contractual provisions stipulating that their liability shall be reduced by the amount of any payment collected by the injured party from

others. In that case the plaintiff shipped a quantity of sugar from Puerto Rico to Philadelphia on the ship Julia Luckenbach which was owned by one of the defendants and chartered by the other defendant. The cargo was severely damaged and the plaintiff shipper brought suit seeking recovery for his damages. The carrier argued it was entitled to credit for the money paid the shipper by its insurance company, but in answer it was contended this money received by the shipper was a loan and not a payment. The sugar had been shipped under a bill of lading providing the carrier defendant would receive the benefit of any insurance the shipper might have on the goods. The insurer's policy, however, provided the insurer would not be liable for any damages in cases where the bill of lading attempted to secure the benefit of insurance for the carrier. Thus a conflict was presented between the carrier attempting to get the benefit of insurance through the contractual provisions of its bill of lading and an insurance company excluding liability in effect if the carrier was liable. If the carrier was not liable, of course, what was provided in the bill of lading would have no effect and the insurer would be liable under its policy. In this context the insurance company made a loan to its insured repayable out of recovery from the carrier. The transaction was held to be a valid loan and the carrier not to be entitled to any credit because of the provisions of its bill of lading.

Some subsequent cases citing *Luckenbach* have lost sight of the fact the loan agreement therein involved was in fact intended to be a loan and was justified under the circumstances that the insurer's liability was contingent in effect upon the nonliability of the carrier. Many of these cases are cited and commented upon in Anno. — Insurance — Loan Receipts, 157 A. L. R. 1261. In *Bolton v. Ziegler* (D. C. Iowa 1953), 111 Fed. Supp. 516, apparently all of the cases decided up to that time and the literature by way

of text and law review articles in any way relating to loan receipts and agreements are collected. The cases are grouped under various classifications without, however, any critical analysis. The case, however, holds that the loan agreement used was invalid as an attempt to secure contribution between joint tort-feasors which was not permitted in Iowa whose substantive law governed the facts.

We do not say that all policy or coverage defenses may justify the use of the loan receipt; but, where the liability under the terms of the indemnity or liability policy is contingent, loan receipts and agreements have been sustained as not being payments in fact. In another class of cases akin to *Luckenbach,* loan receipts and agreements have been upheld in order to avoid or eliminate any contention or possibility that a void insurance policy was valid, which might be the case if payment were made. This class of cases is illustrated by *Kossmehl v. Millers National Ins. Co.* (1945), 238 Mo. App. 671, 185 S. W. (2d) 293, in which two separate policies by different companies were issued covering a ring. Both policies in effect excluded liability if the other policy was in effect. A loan receipt and agreement used by one company was sustained so that the transaction under its policy would not be construed as proof that its policy was in effect and the other policy void. It is to be noted that in this type of case, as in *Luckenbach,* the subsequent lawsuit brought under the loan agreement determined the contingency or the liability of the insurer making the loan and was not an action to recoup money it had a liability to pay. In the valid use of a loan agreement, the money loaned did not have to be paid under the policy provisions. It must be admitted that the loan in these types of cases may be subsequently converted in effect into a payment because of the determination of a fact which makes the loan not repayable.

Another type of case in this class in which the loan agreement is justified arises when an insurer has a policy which provides only excess insurance. *Young v. Drive-It-Yourself, Inc.* (1961), 115 Ohio App. 307, 184 N. E. (2d) 912, is such a case. There, a payment would have been a waiver of the defense of excess coverage and, therefore, a loan agreement was justified in order that the question of primary or excess insurance could be determined in an action contemplated by the loan agreement. The insurer loaning the money had a contingent liability and would have been prejudiced by a payment under its policy. Other cases recognizing the validity of loan receipts and agreements to protect the insurer whose liability is contingent or excess as distinguished from an absolute or unconditional liability are *Clow v. National Indemnity Co.* (1959), 54 Wash. (2d) 198, 339 Pac. (2d) 82; Comment, 35 Washington Law Review (1960), 190; and *First Nat. Bank of Ottawa v. Lloyd's of London* (7th Cir. 1940), 116 Fed. (2d) 221. Conversely, when the courts have found the insurer's liability was absolute and unconditional and payment should have been made, the use of a loan receipt to avoid subrogation has been criticized and held an invalid use amounting to payment. Such a result was reached in *Yezek v. Delaware, L. & W. R. Co.* (1941), 176 Misc. 553, 28 N. Y. Supp. (2d) 35, when the court commented the "detour in the form of a loan was unnecessary to secure prompt payment or protect the insurer." The rationale of this case was adopted in *Purdy v. McGarity* (1941), 262 App. Div. 623, 30 N. Y. Supp. (2d) 966.

The use of a loan receipt and agreement as a substitute for a subrogation suit was struck down in *American Alliance Ins. Co. v. Capital Nat. Bank* (1946), 75 Cal. App. (2d) 787, 171 Pac. (2d) 449. In this case the insurer was not entitled to subrogation. The successful use of the loan-agreement device would thus be against public policy. In

*Cleveland Paint & Color Co. v. Bauer Mfg. Co.* (1951), 155 Ohio St. 17, 97 N. E. (2d) 545, the plaintiff, a dealer in ladders, was held not to be a real party in interest in a suit brought for indemnity against the manufacturer of a defective ladder where the dealer had been "loaned" money to pay the damages suffered by his customer. In principle, this case is similar to the instant case.

On the other hand there are cases supporting the position of the appellant that the use of the loan-agreement device is justified in cases to avoid subrogation in form. The justification in this class of cases is to protect the insurers by non-disclosure from the prejudice of juries against insurance companies especially in subrogation cases. *Merrimack Mfg. Co. v. Lowell Trucking Corp.* (1944), 182 Misc. 947, 46 N. Y. Supp. (2d) 736, is typical of this reasoning. For a discussion of the New York cases prior to 1950, see Van Orman, The Loan Receipt in New York, 1950 Insurance Law Journal, No. 328, 313; Notes, 24 New York University Law Quarterly Review (1949), 171. Effective September 1, 1950, the real-party-in-interest statute in New York (Sec. 210, Civil Practice Act) was amended to provide an exception that an insured person who has executed to his insurer either a loan agreement or subrogation receipt may sue without joining with him the person for whose benefit the action is prosecuted.

Wisconsin has no such statute and the reasoning of the *Merrimack Case* has no justification here at least in regard to automobile accident cases because in such cases insurers may be sued directly by the injured party. Secs. 260.11 and 204.30 (4), Stats. In fact if an insurer could use the loan-receipt device to avoid subrogation in Wisconsin it would receive an advantage because while its identity could thus be hidden it could expose the identity of the insurer of the third party.

The appellants in their reply brief attempt to argue the casualty company's liability was contingent and not absolute. The argument fails to convince us that the loan transaction was entered into because of any contingent liability under the terms of the policy nor does the record disclose any such reason. Perhaps the liability was undetermined but that is not identical with being contingent. Nowhere in the loan agreement, which elaborately states the reasons for making it, is there any claim the loan receipt was used for any other purpose than to reimburse the casualty company for the money it claimed it loaned. On the facts presented, we cannot find the parties intended this to be a loan and not a payment, but assuming the insurer can intend and make this type of loan, it is not a valid device for the indirect enforcement of subrogation rights so that the insurer receives back money by way of recoupment.

The two Wisconsin cases cited by the casualty company are not to the contrary. In *Liner v. Mittelstadt* (1950), 257 Wis. 70, 42 N. W. (2d) 504, the loan agreement was treated by the court as payment. The insurer made an assignment of its subrogation rights to its insured which assignment was held to be sufficient to constitute the insured assignee the real party in interest. In *Homeland Ins. Co. v. Carolina Ins. Co.* (1952), 261 Wis. 378, 52 N. W. (2d) 782, the dispute was between two insurance companies over their liability. Both had made partial payments to their common insured under an agreement in which they reserved their rights to determine their liability as against each other. A loan agreement was referred to incidentally. Neither case is authority for the casualty company's contention the plaintiff is the real party in interest in this case.

*By the Court.*—Judgment affirmed.