**In the Matter of Philip Lester BERGE and Betty Jo Berge, Debtors.**

**Philip Lester BERGE and Betty Jo Berge, Plaintiffs,**

v.

**VALUE ENTERPRISES, LTD., Defendant.**

**Adv. No. 83–0200–11.**

United States Bankruptcy Court, W.D. Wisconsin.

June 25, 1984.

Michael Kepler, Madison, Wis., for creditors' committee.

Thomas G. Travers, Tomlinson, Gillman & Travers, S.C., Madison, Wis., for defendant.

Linda D. Taplick, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for plaintiffs.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Plaintiffs-debtors, Philip and Betty Jo Berge ("the Berges") own a farm known as the Newell farm as tenants in common with Gordon and Ruth Stenoien ("the Stenoiens"). The Stenoiens hold an 85% interest in Value Enterprises, Ltd. ("VEL"), the defendant. On March 19, 1981, the Berges and VEL entered into a loan agreement drawn up by VEL pursuant to which VEL loaned the Berges $250,000 at 20% interest due on July 1, 1981. The due date was later extended to December 31, 1981. As security for the loan, the Berges granted VEL an option to buy their half-interest in the Newell farm which VEL could exercise at any time the Berges defaulted under the loan agreement. Upon full repayment of the loan, the VEL option would terminate and the Berges would in turn be entitled to exercise an option to purchase the Stenoien's interest in the farm. The price set for exercise of each of the options was $900/acre less development costs. To exercise its option, VEL would assume the Berge's remaining debt under the loan agreement in partial payment of the $900 per acre price. Neither the loan agreement nor either option was recorded with any Register of Deeds.

When the Berges filed under chapter 11 on June 1, 1982, they had not made any payments to VEL, but they remained in possession of the land. On June 15, 1983, VEL sent a notice of exercise of its option, premised on the Berge's default. The Berges brought this action seeking to have the VEL option declared an unrecorded mortgage subject to avoidance by the debtors in possession. Berges have sought the further declaration that 11 U.S.C. § 362(a) stays any effort of VEL to attempt to exercise its option. A trial was held on March 14, 1983 and the parties have submitted excellent briefs.

As a preliminary matter, the court must determine whether the document in question is to be treated as an option to buy land or a mortgage. Previous Wiscon-

sin cases which determined whether a transaction was a sale of property or a mortgage looked to the intent of the parties. *McFarlane v. Louden,* 99 Wis. 620, 75 N.W. 394 (1898); *R.F. Gehrke Sheet Metal Works v. Mahl,* 237 Wis. 414, 419, 297 N.W. 373 (1941). "The form of a transaction if inconsistent with its substance is not controlling." *Kopperud v. Chick,* 27 Wis.2d 591, 595, 135 N.W.2d 335 (1965). In the present case the loan agreement and "option" are in the same document. That agreement refers to the option as "good faith collateral" for the loan. No other security was given. The option provides a remedy similar to foreclosure, even strict foreclosure, if the debtor's loan balance due is greater than $900/per acre at the time the option is exercised. The option is triggered by default and terminated upon payment of the loan it secures. All of these characteristics are indices of a mortgage.

■ The loan agreement states, "the intent of the transaction and agreement is for VEL to provide a business loan to the Berges ... [e]xercise of the option ... is not the primary intent." There is no evidence that VEL ever tried to negotiate for or to purchase the property prior to the execution of the loan agreement. It is clear that both VEL and the Berges intended that the land be pledged as collateral for the $250,000 loan. Whatever name is given to the document of pledge it is a mortgage. The agreement identifies the parties, the land and the interest, is signed by the parties, and delivered. It therefore meets the formal requisites of an enforceable mortgage in Wisconsin,[1] save the recordation which would afford it priority over later recorded interests.[2]

■ VEL asserts that even if the option has the legal character of a mortgage the Berges, as debtors in possession, may not avoid its asserted lien under the "strong arm" provision of 11 U.S.C. § 544(a)(3). That section provides that the trustee[3] may avoid "any transfer of property ... or any obligation incurred by the debtor that is voidable by ... a bona fide purchaser ... against whom applicable law permits such transfer to be perfected...." The applicable law is WIS. STAT. § 706.08(1)(a) which states that unrecorded mortgages are void as to subsequent bona fide purchasers.[4] VEL asserts that the Berges as debtors in possession cannot be bona fide purchasers because they have constructive notice of the VEL interest.[5] Under the

---

1. WIS. STAT. § 706.02 provides that "(1) [Conveyances] shall not be valid unless evidenced by a conveyance which:

    (a) Identifies the parties; and
    (b) Identifies the land; and
    (c) Identifies the interest conveyed ... and
    (d) Is signed by or on behalf of each of the grantors; and

    (g) Is delivered."

2. WIS. STAT. § 706.08(1)(a), n. 4 *infra.*

3. In a chapter 11 case, the debtor in possession exercises most of the powers of a trustee, including the power to avoid transfers under § 544 of the Code. 11 U.S.C. § 1107(a).

4. WIS. STAT. § 706.08(1)(a).
    Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

5. Both state and federal law play a part in the application of 11 U.S.C. § 544(a)(3). The federal statute requires the application of state law to determine the rights of a hypothetical good faith purchaser, but the Bankruptcy Code qualifies this determination by excluding from the factual context any *actual* knowledge of the trustee or debtor in possession. What the trustee knows or does not know is legally irrelevant to his status as a good faith purchaser; only the *constructive* notice as provided by state law is dispositive as to his "good faith purchaser" status. Such constructive notice derives from various public records and from the possession of the property. Possession under Wisconsin law is notice of whatever rights the possessors have, and "of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose." *Bump v. Dahl,* 26 Wis.2d 607, 615, 133 N.W.2d 295, 134 N.W.2d 665 (1965).
    In *In Re Fitzpatrick,* 29 B.R. 701 (Bankr.W.D. Wis.1983), the trustee was held to constructive notice of the rights of purchasers under an unrecorded land contract because the possession by tenants other than the record holders of title would put a purchaser on inquiry as to the true owner. In the present case, possession was

Bankruptcy Code, the trustee's or debtor in possession's actual knowledge is irrelevant to his hypothetical bona fide purchaser status and powers.[6]

 A bona fide purchaser under Wisconsin law must be without notice of existing rights in land. *Bump v. Dahl*, 26 Wis.2d 607, 133 N.W.2d 295, 134 N.W.2d 665 (1965). "Notice" of such rights derives from consultation of three important sources: the Register of Deeds, public records of judgments, and the property itself to determine rights arising from possession or use. *Id.* at 613–615, 133 N.W.2d 295, 134 N.W.2d 665; *cf. In Re Fitzpatrick*, 29 B.R. 701, 704 (Bankr.W.D.Wis. 1983). Had the "option" agreement been recorded, a bona fide purchaser would be held to have such notice. *In Re Fitzpatrick, supra; cf., Kordecki v. Rizzo*, 106 Wis.2d 713, 317 N.W.2d 479 (1982). (Recorded lis pendens put purchaser on constructive notice of a potential title problem.) But neither the VEL option nor any other document identifying VEL as having an interest in the Newell farm was ever recorded. Thus, the public record provided no constructive notice of an adverse claim. The actual possession of the property by the Berges was consistent with the record title and caused no notice of the VEL interest. Thus, a hypothetical purchaser would be without constructive notice of the VEL option either from the record or from actual possession. A purchaser from the Berges would therefore be in good faith and entitled to take the land free of the VEL option. Since the grant of this mortgage by the Berges would be void under Wisconsin law as to such a purchaser, it is avoidable by the debtor in possession by virtue of 11 U.S.C. § 544(a)(3). VEL thus has only an unsecured claim for the balance due to it. Since VEL has failed to demonstrate any cause for relief from the stay, any further attempt by VEL to enforce the option would violate 11 U.S.C. § 362.

Upon the foregoing, which constitutes my findings of fact and conclusion of law

in this matter, judgment may be entered declaring that:

1. Any interest of defendants in the subject real estate is subordinate to the interest of plaintiffs as debtors in possession;

2. Defendants have an unsecured claim for the balance due under the loan agreement; and

3. Any attempt by defendants to enforce the "option" against the debtors in possession during the pendency of this case and until further order of this court will violate the automatic stay of 11 U.S.C. § 362.

---

fully consistent with record title, and a purchaser would not be put on inquiry as to any adverse interest.

**6.** 11 U.S.C. § 544(a) governing each of the trustee's "strong-arm" powers, grants those powers "without regard to any knowledge of the trustee...." *See* n. 5, *supra*.