LINER, Administrator, Respondent, vs. MITTELSTADT and others, Appellants.

*April 4—May 2, 1950.*

74

For the appellants Mittelstadt there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *A. W. Lueck.*

For the appellant Potomac Insurance Company of the District of Columbia there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Hooker & Wagner* of Waupun, and *Wolfe, O'Leary & Kenney* of Milwaukee, and oral argument by *H. O. Wolfe* and *E. W. Hooker.*

BROWN, J. If the question of ownership of the vehicle at the time of the accident is determined the issues are simplified and that question will be considered first. The Uniform Sales Act, ch. 121, Stats., affects transactions of this sort. Portions of that act which the parties deem material are:

"121.18 *Property in specific goods passes when parties so intend.* (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

"121.19 *Rules for ascertaining intention.* Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"(1) Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and

it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. . . .

"(5) If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

Though the terms, conduct, and circumstances of the case do not all point one way, our conclusion concerning the intention of the parties is that reached by the learned trial court; namely, that property in the vehicle had not passed to the buyer (Hinshaw) at the time it was wrecked. The bill of sale set a time, 11:59 p. m., June 15, 1945, for the buyer to take possession and informed him where the property was. Until then it is clear that the seller exercised the usual rights of an owner by dispatching two of the vehicles upon his own business, driven by his own employees, and he received and retained compensation for that vehicle which completed its errand. Notwithstanding the transaction at the bank, the seller carried on for the rest of the day exactly as he had before that event. The buyer, for his part, does not appear to have expected anything different. Although the bill of sale transferred to him, "All licenses and authorities pertaining to Reinie's Transfer for the Borden Milk Company," he made no attempt to exercise control over the movement of the trucks on the Borden business, or any other business. He did not provide drivers or other employees of his own nor did he select or direct the seller's employees in reference to the property which he was interested in; and he did not stand the expense or receive the compensation for what the appellants now say was the use of his property. It is our opinion that this conduct is stronger evidence of an intent for the seller to retain ownership at least until 11:59 p. m., than the payment of purchase price and receipt of the bill of sale and certificates of title is of intention to

put immediate ownership in the buyer. As a makeweight favoring our conclusion we note that the agent of the Potomac Insurance Company advised the seller not to cancel his insurance as of that moment. As the protection given by the policy would cease with the transfer of property in the vehicles, the agent's advice, accepted and acted upon by the seller, indicates a recognition that ownership was meant to continue in the seller to some future time or event. We have not overlooked the fact that the buyer obtained insurance on the same property. However, this was arranged in advance, and was evidenced by binder only, not by a policy, and gave protection to Hinshaw as of June 14, 1945, on which date no one claims Hinshaw had title to any of the property. In our view this shows no more than precaution on Hinshaw's part that there should be insurance which would go into effect immediately upon his becoming the owner; it does not show that he became owner in the afternoon of June 15th rather than at some other time.

If the parties did not intend property in the items listed in the bill of sale to pass when the bill and certificates of title were delivered, when did they intend it to do so? It was the expectation of both that the seller would deliver the property to the buyer at 11:59 p. m., June 15, 1945, at Reinie's Transfer, in Columbus, which was the seller's place of business. This seems implicit in the bill of sale, but if it is not we consider that sec. 121.43 (1), Stats., operates to the same conclusion.

"121.43 *Place, time, and manner of delivery.* (1) Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties. Apart from any such contract, express or implied, or usage of trade to the contrary, the place of delivery is the seller's place of business if he have one, and if not, his residence; . . ."

Thus as to such items as the seller had in his garage, Reinie's Transfer, at 11:59 p. m., in deliverable condition, property then passed to the buyer. However, the seller was then using two vehicles and had not returned them. This was a contingency which we cannot find was foreseen by the parties (though it has been argued that they must have foreseen it) or provided for in the contract and in such a case their intention is ascertained by applying the statutory rules enacted for that purpose. We hold Rule 5, sec. 121.19 (5), Stats., to be the one applicable. Accordingly, property in the unit which had not reached the Transfer remained in the seller at 11:59 p. m., and was still in him when the accident occurred. This is what the trial court found and concluded. Because of the accident the seller was not able to perform his contract in respect to this vehicle and was correctly held to be liable to the buyer for the resulting loss and damage in an amount stipulated by the parties and incorporated in the judgment. The judgment in favor of Hinshaw and against Mittelstadt must be affirmed.

The contention of appellant, the Potomac Insurance Company, which rests upon the assertion that Mittelstadt's ownership and, consequently, the Potomac Insurance Company's coverage of the vehicle, had ended before the accident is disposed of adversely to the appellant by what we have already said. The Insurance Company also submits that it had canceled the policy at Mittelstadt's request, effective before the loss, and therefore is not liable to him regardless of ownership. We do not think the record supports the contention. The policy recited:

"*Cancellation.* This policy may be canceled by the insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not

less than five days thereafter such cancellation shall be effective. . . ."

There was never strict compliance with this provision. Mittelstadt first directed the agent of the insurer to have the policy canceled. The agent, who was also the agent of the mortgagee, demurred and his assistant advised that the policy would have to go to Milwaukee for that purpose which would take at least another day. Actually it was three days before the Milwaukee office acted. During this period the policy was certainly in effect notwithstanding the company's action, on June 18th, of dating back cancellation to 12:01 a. m., on June 16th. The policy provision for cancellation here is the same as that in *Suennen v. Evrard* (1949), 254 Wis. 565, 36 N. W. (2d) 685. In the case at bar, as in the *Suennen Case,* the insured did not comply by giving any written notice and the agent, who mailed the policy to the company for cancellation, did not state in his covering letter when, after the notice, the cancellation should be effective. In *Suennen v. Evrard, supra,* we held on facts similar to those now before us that no cancellation had become effective at the time of the accident. We do not consider that counsel has successfully distinguished that case from the instant one. It is in point and we cite it with approval as authority supporting the trial court's conclusion of law that the Potomac Insurance Company's policy had not been canceled when the accident occurred.

The Potomac Insurance Company also submits that the North British & Mercantile Insurance Company had acquired the plaintiff's rights by subrogation and was, therefore, the real party in interest. Our view of the facts, as disclosed by the record, is that neither Hinshaw nor his insurer could be certain how a court would ultimately decide questions of title and coverage. To prevent the loss of such rights as Hinshaw might have under the binder, he made claim and the insurer then paid him, as a loan to be repaid only out

of the proceeds of any recovery of damages by him, a sum equal to his insurance. The company then assigned Hinshaw such rights as it acquired by subrogation because of the loan. Counsel for the Potomac Insurance Company made many valiant attempts to interplead the North British & Mercantile Insurance Company as the real party in interest but on each occasion the trial court denied his motion, correctly, as we consider it, under the authority of *Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 237 N. W. 277, 240 N. W. 405, and *Leonard v. Bottomley* (1933), 210 Wis. 411, 245 N. W. 849, which hold that an absolute assignment of the rights which the insurer had acquired by subrogation constitutes the assignee the real party in interest notwithstanding a collateral agreement by which the assignee contracts to pay to the assignor part of the amounts ultimately collected. The device of the loan, rather than an immediate payment of money as insurance, to avoid prejudice to the rights of parties until doubtful questions may be resolved has had the commendation of the supreme court of the United States in the opinion of Mr. Justice BRANDEIS appearing in *Luckenbach v. McCahan Sugar Co.* (1918), 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170.

Appellant Potomac Insurance Company also submits that if its policy protected Mittelstadt at the time of the action he has lost his rights under it because he failed to file a proof of loss and to observe the other requirements which the policy made conditions precedent to his right of action. Oral testimony and a letter which appears as an exhibit show that the Insurance Company denied all liability under the policy and we agree with the trial court that the assured was excused from compliance with the contract which the insurer repudiated.

Finally, the Potomac Insurance Company submits that the complaint's first cause of action sounded in contract; the second in tort; Mittelstadt's cross complaint against the

company prayed judgment in the amount which he might have to pay the plaintiff. Counsel for the company moved that Mittelstadt be required to elect between these causes in his cross action on the policy. The court took the motion under advisement and the trial proceeded. Except that a denial of the motion may be implied from a failure to grant it, no ruling and no election was made. Counsel complains his client was thus compelled to try the action as though a liability might be predicated in tort. The policy gave coverage to Mittelstadt and his mortgagee only for damage to their property. It did not insure them against liability to others for their own wrongful acts. It was the ordinary collision policy. The amount of the property damage was of interest to the insurer and was being litigated between Hinshaw and Mittelstadt. To have both the contract and the tort causes of action of the plaintiff's complaint incorporated in Mittelstadt's cross complaint may have caused counsel for the Insurance Company some additional work, but our opinion of his knowledge and ability is so high that we doubt whether it subjected him to much anxiety. At any rate, we observe that the pleadings did not restrict him in raising matters of defense nor prevent him from defending ably on every issue, whether raised by himself or another. We believe the issues between the three parties have been thoroughly and fairly tried and no prejudice to the Potomac Insurance Company resulted from delay or failure of a ruling on its motion to compel an election and we have concluded that the judgment is in accord with the facts and the law.

*By the Court.*—Judgment affirmed.

HUGHES and GEHL, JJ., took no part.