James J. PAAPE, Plaintiff-Appellant,

v.

The NORTHERN ASSURANCE COMPANY OF AMERICA, a foreign corporation, Defendant-Respondent.

Court of Appeals

*No. 86–1438. Submitted on briefs August 4, 1987.—Decided October 21, 1987.*

(Also reported in 416 N.W.2d 665.)

45

For the plaintiff-appellant the cause was submitted on the briefs of *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.,* with *Daniel J. Cook* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Piette, Knoll & Nelson, S.C.,* with *Craig W. Nelson* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. James J. Paape appeals from a summary judgment granted in favor of Northern Assurance Company of America. He raises three issues: (1) whether Northern, by refusing to make a payment for underinsurance, waived all its policy rights and defenses; (2) whether the trial court erred in deciding the issue of contract reformation when it was not raised by Northern's motion for summary judgment; and (3) whether, after Northern refused to pay his underinsurance claim, Paape's general release of the tortfeasor violated the terms of his policy thereby precluding any recovery. Because Northern, in refusing Paape's claim for underinsurance, acted within its policy rights and retained all of its contractual defensive rights, because Paape waived his right to a review of the trial court's rejection of the

reformation claim, and because Paape's release of the tortfeasor violated the terms of the policy precluding any recovery, we affirm.

The undisputed facts can be summarized as follows. In August, 1982, Paape was injured when his vehicle collided with another vehicle driven by Roy Cullen. At the time of the accident, Cullen carried $25,000 of liability insurance with American Family Insurance Company and Paape carried $15,000 of underinsurance coverage with Northern. Paape presented his claim to Cullen and American Family and also notified Northern of the claim. In August, 1983, Paape made both a demand on American Family for the $25,000 policy limits and an underinsurance claim to Northern because his damages were in excess of Cullen's policy limits.

In September, 1983, Northern rejected Paape's underinsurance claim. The following month Paape accepted Cullen's settlement offer of his policy limits of $25,000 and executed a general release to American Family and Cullen. Paape then brought an action against Northern: (1) to reform his policy of insurance to provide $100,000/$300,000 in underinsurance protection instead of the stated amount of $15,000/$30,000; (2) for breach of contract for failure to provide him with underinsurance coverage; and (3) for acting in bad faith towards him.

The relevant policy clauses provide:

> **"Underinsured motor vehicle"** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

. . .

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

. . .

However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.

. . .

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

 1. Whatever is necessary to enable us to exercise our rights and
 2. Nothing after loss to prejudice them.

[Boldface in original.]

Northern moved for summary judgment. The trial court concluded that Northern did not deny underinsurance coverage but only its liability under the terms and conditions of the policy.[1] The trial court construed the clause which stated that the liability limit shall be reduced by all sums paid by persons who may be legally responsible to mean that underinsu-

---

[1]Whatever distinction may be made between coverage and liability, we conclude that, under the facts of this case, such a distinction is not significant. What is significant is that Northern did not breach its contract by correctly determining that its underinsurance provisions did not require a payment to Paape.

rance coverage was for the first $15,000 of damages sustained by the insured. Since Cullen carried $25,000 of liability insurance, Northern had no obligation to Paape. Because Northern did not breach its contract, it did not waive any right to subrogation. The court found that Paape, by executing the general release with Cullen and American Family, violated its contract with Northern. Thus, the trial court granted the motion for summary judgment dismissing the case against Northern.

██ Section 802.08(2), Stats., provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, we follow the same methodology as the trial court. Because that methodology is detailed in *Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and is well known, we will not repeat it here.

██ A motion for summary judgment may be used to address issues of insurance policy coverage. *State Farm Mut. Auto. Ins. Co. v. Kelly,* 132 Wis. 2d 187, 189, 389 N.W.2d 838, 839 (Ct. App. 1986). Because the record made on motion for summary judgment indicates that there is no material issue of fact in dispute, and the issue involves the construction of a contract, we are presented with a question of law. *See id.* at 190, 389 N.W.2d at 839.

The dispositive issue of this appeal is whether Northern was within its rights to deny payment under its underinsurance provisions. If so, Northern did not breach its contract and all other contentions fall.

It is elementary that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid. *Inter-Insurance Exch. of the Chicago Motor Club v. Westchester Fire Ins. Co.,* 25 Wis. 2d 100, 104, 130 N.W.2d 185, 188 (1964). In the absence of stated legislative policy to the contrary, the extent of liability of an insurance company is based upon the contract entered into between the parties and must be governed by its terms and conditions. *See Tischendorf v. Lynn Mut. Fire Ins. Co.,* 190 Wis. 33, 42, 208 N.W. 917, 921 (1926). When the terms of a policy are plain on their face, a court need not resort to either construction or case law to bolster its recognition of the policy's plain meaning. *Garriguenc v. Love,* 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975). Words used in the policy should be given their common everyday meaning and should be interpreted as a reasonable person in the insured's position would have understood them to mean. *Id.* at 134–35, 226 N.W.2d at 417.

██
We conclude that Northern's policy terms concerning the extent of liability under underinsurance motorist coverage are not ambiguous. The policy clearly states that an underinsured motor vehicle is one to which a liability policy applies but its limit is less than that of Northern's. Because Cullen's policy provided for $25,000 in liability coverage, and Paape's coverage was for $15,000, Cullen's vehicle was not underinsured as defined by the policy. Additionally, the policy provides that the extent of Northern's liability is reduced by all sums paid for the bodily injury caused by persons who may be legally responsible. Therefore, the $25,000 settlement from American

Family effectively reduced any underinsurance liability to zero.

Northern did not have a duty to pay damages under the contract. Northern was within its rights under the plain terms of its underinsurance provisions to assert its position and not forego any of its contractual defenses.

Paape also contends that the summary judgment ought to be reversed because the trial court erred in *sua sponte* deciding the issue of reformation of the contract when the issue was not raised by any of the parties to the summary judgment motion. We disagree.

Our supreme court has consistently held that no error of the trial court is reviewable as a matter of right on appeal "without having given the trial court an opportunity to be apprized [sic] of an correct the error." *Herkert v. Stauber,* 106 Wis. 2d 545, 560, 317 N.W.2d 834, 841 (1982).

Paape is correct that none of the motion papers or supporting documents even suggests that the issue of contract reformation be considered at the summary judgment hearing. Nevertheless, the trial court in no uncertain terms found that the reformation of contract claim was without merit. At the conclusion of the hearing, after the trial court granted the motion to dismiss, Paape's counsel confirmed that the trial court was saying that the denial of liability did not amount to waiver. He then asked if Paape would not "be allowed to get to the reformation issue, since [he] didn't continue to protect the underinsured?" The trial court responded, "No. I'm basing it really on two independent grounds. One is that there was no waiver and, consequently, you're estopped from going further

and, secondly that the reformation argument patently is without merit."

Because the purpose of alerting the trial court to any error is corrective in nature, i.e., to avoid a costly and time-consuming appeal, and is as salutary for summary judgment purposes as for motions after verdict, we conclude that the failure to present this error to the trial court for its appraisal and correction constitutes waiver. Even if the court's action was erroneous, because Paape made no effort to point out the error or move for reconsideration thereby affording an opportunity for the trial court to correct the error, we hold that the right to appellate review on this issue is waived.

Even if the right to review of the reformation issue was not waived, once Paape released the tortfeasor, he breached his contract with Northern. Thus, he is not entitled to any recovery under the contract. Because Northern did not forego any contractual defenses by denying payment to Paape, Northern was within its contractual rights to insist that Paape comply with the terms obligating him to do "nothing after loss to prejudice" Northern's subrogation rights. In executing a general release, Paape did exactly what he ought not do, and thereby breached his contractual obligations.

Paape argues that Northern's denial of payment acts as a waiver of its policy defenses, citing to *Ehlers v. Colonial Penn Insurance Co.,* 81 Wis. 2d 64, 259 N.W.2d 718 (1977) and *Liner v. Mittelstadt,* 257 Wis. 70, 42 N.W.2d 504 (1950). He also argues that in the absence of a demonstration of prejudice to Northern, the general release of the tortfeasor should fail as a policy defense pursuant to *Ryder v. State Farm*

*Mutual Automobile Insurance Co.,* 51 Wis. 2d 318, 187 N.W.2d 176 (1971).

██

None of these cases are persuasive. *Ehlers* stands for the proposition that a denial of liability by an insurer, made during the time when proofs of loss must be presented, waives the requirement that the proofs be submitted. *Ehlers,* 81 Wis. 2d at 72, 259 N.W.2d at 723. *Ehlers* does not stand for the broader proposition that a denial of liability based on the contract provisions, waives the insurer's right to its policy defenses, such as its rights to subrogation. *Liner* stands for the proposition that an insured is excused from complying with a contract which an insurer has repudiated. *Liner,* 257 Wis. 2d at 80, 42 N.W.2d at 510. Since Northern did not repudiate its contract, it had a right to expect compliance with its provisions.

Finally, Paape cites no Wisconsin case supporting his proposition that the insurer has to demonstrate some prejudice resulting from the general release of the tortfeasor before it can raise a policy defense. The case he does cite states that an estoppel arises when it would be inequitable to permit an insurer to raise a policy defense. "Estoppel depends upon a prejudicial change of position by the *insured* or by an *injured third party,"* Ryder,* 51 Wis. 2d at 323, 187 N.W.2d at 179 (emphasis added). Thus *Ryder* is inapplicable to the facts of this case.

Paape argues that when Northern failed to reach a satisfactory disposition of his underinsurance claim within a reasonable amount of time, he was free to settle for the tortfeasor's policy limits without further protecting Northern's rights to subrogation. We do not dispute Paape's freedom of action, but he may not ignore his clear contractual responsibilities and must

bear the consequences of his actions taken in disregard of the face amount and terms of his underinsurance coverage. In view of the clear language of the policy, he is deemed to know the limits of his coverage, the definition of an underinsured vehicle, the existence of the reduction clause, and the obligation to protect Northern's subrogation rights.[2] Paape's legal action against Northern should have preceded his release of the tortfeasor which resulted in a breach of his contract with Northern.

*By the Court.*—Judgment affirmed.

---

[2]In *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986) our supreme court adopted a procedure whereby a claimant and the underinsurer shall proceed in such a fashion as to preserve the underinsurer's subrogation rights. The decision is dated April 2, 1986. The settlement in this case was executed in October, 1983. The preferred procedure was unrecognized at the time of this settlement.