**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 22, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1697**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV468

**IN COURT OF APPEALS**
**DISTRICT III**

DONALD M. MILLER AND CHRISTY MILLER,

   PLAINTIFFS-RESPONDENTS,

 V.

WEST BEND MUTUAL INSURANCE COMPANY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Eau Claire County: JAMES M. PETERSON, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1  STARK, P.J.  West Bend Mutual Insurance Company (West Bend) appeals from a judgment awarding Donald M. and Christy Miller (the Millers)[1] $225,000 in underinsured motorist (UIM) benefits under an insurance policy issued by West Bend, as a result of an accident involving an employer-owned vehicle, driven by Miller, and an Eau Claire County (the county) snowplow. Although West Bend's policy excluded government-owned vehicles from the definition of an "underinsured motor vehicle," the circuit court determined that public policy and the "reasonable expectations" of the insureds prevailed over the language of the policy.  The court ruled that West Bend's policy provided UIM coverage under the circumstances.

¶2  We conclude that the circuit court failed to apply the plain language of West Bend's policy to the facts of this case, and, therefore, the court erred by determining that West Bend's policy provided UIM coverage for the Millers' damages.  Pursuant to the 2011 amendments to WIS. STAT. § 632.32 (2021-22),[2] which repealed or amended the earlier 2009 Wisconsin Act 28 modifications to motor vehicle insurance policies, UIM coverage is no longer mandatory in this state, and the statute no longer contains a definition of the term "underinsured motor vehicle."  *See* 2011 Wis. Act 14, §§ 15C, 17M.  Our supreme court's decision in ***Brey v. State Farm Mutual Automobile Insurance Co.***, 2022 WI 7, ¶25, 400 Wis. 2d 417, 970 N.W.2d 1, affirmed that the 2011 amendments "expanded insurers' options for contractually defining UIM coverage."

---

[1] For ease of reading, we will refer to Donald and Christy as "the Millers."  Given that Christy is only involved as it pertains to filing this case, we will also refer to Donald, individually, as "Miller."

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3     Accordingly, West Bend may contractually define "underinsured motor vehicle" when setting the scope of UIM coverage within its insurance policies.  Under the plain language of West Bend's policy, a government-owned vehicle—e.g., the county's snowplow—cannot be an "underinsured motor vehicle."  As a result, there is no initial grant of UIM coverage for Miller's accident.  We therefore reverse and remand with directions that the circuit court grant West Bend's motion for summary judgment and dismiss West Bend from this case.

## BACKGROUND

¶4     For the purpose of this appeal, the facts are undisputed.  Miller was injured when the county's snowplow was clearing snow on Interstate 94.  The snowplow pushed snow off of an overpass and onto Miller's vehicle, located below, as Miller was driving on County Highway F.  According to the complaint, the snow "landed on his van windshield, causing the windshield to crash inward," and Miller suffered injuries as a result.  At the time of the accident, Miller was acting in the course of his employment and was driving a van owned by his employer.[3]

¶5     The Millers sued the county and its liability insurer, asserting that the county's snowplow driver was negligent.  In an amended complaint, the

---

[3] Miller filed a worker's compensation claim with his employer, and he obtained benefits totaling $496,794.29.

Millers also asserted a claim against West Bend for UIM coverage under an insurance policy issued to Miller's employer (hereinafter, the policy).[4]

¶6     West Bend moved for summary judgment on the issue of UIM coverage. In its motion, West Bend asserted that the policy, in effect on the date of the accident, did not provide UIM coverage for Miller's injuries. West Bend's policy provided that "[w]e will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.'" The policy then defined an "underinsured motor vehicle" as "a land motor vehicle or 'trailer,'" but the policy specified that "'underinsured motor vehicle' does not include any vehicle" that is "[o]wned by a governmental unit or agency." As it was undisputed that the county owned the snowplow, West Bend claimed that there was no UIM coverage for the accident.

¶7     Relying on this court's decision in *Brey v. State Farm Mutual Automobile Insurance Co.*, 2020 WI App 45, 393 Wis. 2d 574, 947 N.W.2d 205, *rev'd*, 2022 WI 7, 400 Wis. 2d 417, 970 N.W.2d 1, the Millers responded to West Bend's motion by arguing that the scope of UIM coverage was defined by WIS. STAT. § 632.32(2)(d) and could not be limited by policy language. According to the Millers, "West Bend [was] obligated to provide UIM coverage consistent with the requirements of … § 632.32(2)(d), and any restriction to such coverage must be ruled void and unenforceable." (Formatting altered.)

¶8     However, West Bend informed the circuit court that this court's decision in *Brey* had been reversed by our supreme court three days before the

---

[4] West Bend was secondarily involved in this case as the worker's compensation carrier for Miller's employer, claiming a reimbursement interest under WIS. STAT. § 102.29.

Millers filed their response to West Bend's motion. *See **Brey***, 400 Wis. 2d 417, ¶33. According to West Bend, our supreme court's ***Brey*** decision stated that legislative amendments to WIS. STAT. § 632.32 allowed insurers to define the scope of UIM coverage in insurance contracts. *See **Brey***, 400 Wis. 2d 417, ¶¶23-25.

¶9 Consequently, the circuit court allowed the parties to file supplemental briefs. The Millers claimed that despite the language in ***Brey***, "auto insurers do not have discretion to define 'underinsured motor vehicle' as they see fit to limit the scope of statutorily [sic] UIM coverage." For its part, West Bend reiterated that the 2011 amendments to UIM coverage and the ***Brey*** decision governed this case and that decisions applying the prior law or law from other jurisdictions, as argued by the Millers, were inapplicable.

¶10 The circuit court ultimately denied West Bend's motion for summary judgment by oral ruling. The court agreed with West Bend that under the plain language of the policy, a government-owned vehicle is not an underinsured motor vehicle. The court was also persuaded, however, by the Millers' arguments. Specifically, the court agreed with the Millers that the policy's exclusion of government-owned vehicles from the definition of "underinsured motor vehicle" was void and unenforceable. In reaching that conclusion, the court relied on ***State Farm Mutual Automobile Insurance Co. v. Hunt***, 2014 WI App 115, 358 Wis. 2d 379, 856 N.W.2d 633, a case decided under the 2009-10 version of WIS. STAT. § 632.32. The court also concluded that ***Brey***

did not support West Bend's position because "it wasn't on a situation similar." The court entered a written order memorializing its oral ruling.[5]

¶11    The case progressed, and the Millers agreed to a settlement with the county. Pursuant to that settlement agreement, the county agreed to pay the Millers $250,000, the full amount of its liability under WIS. STAT. § 345.05(3), in exchange for a release of the county and its snowplow driver. The county and its insurer were dismissed from the case.

¶12    West Bend then filed a second motion for summary judgment. West Bend argued that pursuant to the policy, the Millers were required to prove they are "legally entitled to recover" from the county or its driver for UIM coverage to exist.[6] According to West Bend, because the Millers "are not legally entitled to recover anything more from [the county] or its snowplow driver, by virtue of the settlement and WIS. STAT. § 345.05(3), the Millers' action against West Bend must be dismissed." In response, the Millers restated their prior argument that WIS. STAT. § 632.32 defined the scope of UIM coverage and required UIM coverage in this case.

¶13    The circuit court also denied West Bend's second motion for summary judgment by oral ruling. Thereafter, the court entered a final judgment

---

[5] West Bend subsequently filed a petition for leave to appeal the circuit court's summary judgment decision with this court. We denied West Bend's petition.

[6] In its motion, West Bend explained that the parties had stipulated that "[i]f the [c]ircuit [c]ourt decides UIM coverage is available under West Bend's policy, then [the Millers] shall have final judgment for $225,000 from West Bend," which ruling West Bend may challenge on appeal. If, however, the court "decides UIM coverage is not available under West Bend's policy, then [the Millers] shall recover nothing from West Bend, West Bend is then entitled to dismissal and final judgment for the purpose of appeal," and the Millers "reserve[] the right to challenge that ruling on appeal."

awarding the Millers $225,000 in UIM benefits from West Bend, pursuant to the parties' stipulation. West Bend appeals.

## DISCUSSION

¶14 The question in this appeal is whether an insurer may contractually define the scope of UIM coverage within an insurance policy. West Bend argues that the circuit court erred by refusing to apply the plain language of the policy excluding government-owned vehicles from the definition of an underinsured motor vehicle. According to West Bend, "[t]he right of insurers to define 'underinsured motor vehicle' as they choose was expressly provided by the [l]egislature's amendment of WIS. STAT. § 632.32 and confirmed by the Wisconsin Supreme Court's decision in **Brey**." West Bend also claims that the court erroneously concluded that the Millers were "legally entitled to recover" from the county despite the settlement agreement and WIS. STAT. § 345.05(3)'s statutory cap.

¶15 In contrast, the Millers claim that the policy's definition of "underinsured motor vehicle" is void and unenforceable because it "functions to eliminate all UIM coverage based solely on accident-vehicle ownership, thereby functioning as an impermissible reducing clause and denying the UIM insured a predetermined fixed level of UIM coverage." (Formatting altered.) The Millers also allege that WIS. STAT. § 632.32(2)(d) "precludes West Bend from standing in the shoes of governmental agents and employees for purposes of the statutory cap." (Formatting altered.)

¶16 The circuit court resolved this case on summary judgment. "In reviewing the grant or denial of a summary judgment, we apply the same methodology as the circuit court and review de novo whether the circuit court

properly granted or denied summary judgment." ***Kaitlin Woods Condo. Ass'n v. North Shore Bank, FSB***, 2013 WI App 146, ¶9, 352 Wis. 2d 1, 841 N.W.2d 562. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Likewise, the interpretation of an insurance policy and the interpretation of a statute are questions of law that we review de novo. ***Secura Supreme Ins. Co. v. Estate of Huck***, 2023 WI 21, ¶10, 406 Wis. 2d 297, 986 N.W.2d 810.

¶17 Based on our review of the statutes, the case law, and the legislature's amendments to the UIM statutory landscape, we conclude that the circuit court erred by determining that the policy's definition of the term "underinsured motor vehicle" was void and unenforceable under WIS. STAT. § 632.32. Pursuant to the 2011 amendments, UIM coverage is no longer mandatory in this state, and § 632.32 no longer contains a definition of an "underinsured motor vehicle." *See* 2011 Wis. Act 14, §§ 15C, 17M-21M. Our supreme court's decision in ***Brey*** approved an insurer's ability to contractually define "underinsured motor vehicle" when setting the scope of UIM coverage within an insurance policy. As the Millers do not point to any statutory provision currently in effect that clearly prohibits the policy's definition of an "underinsured motor vehicle," the policy's definition is not void or unenforceable. Under the plain language of the policy, a government-owned vehicle cannot be an

"underinsured motor vehicle"; therefore, no UIM coverage exists for damages resulting from Miller's accident.[7]

¶18    Integral to our understanding of the issues in this case is our commensurate understanding of the statutory and legislative history of WIS. STAT. § 632.32. "Section 632.32 is sometimes called the '[o]mnibus [s]tatute' because it sets the minimum requirements all motor vehicle insurance policies in Wisconsin must satisfy." *Brey*, 400 Wis. 2d 417, ¶5.  In *Brey*, our supreme court recounted the statute's history, which we will not extensively repeat here, except to note the key points.  "In 2009, the legislature overhauled the UIM statutory landscape" "in favor of enhanced coverage for consumers." *Id.*, ¶22; 2009 Wis. Act 28; *see also* § 632.32(2)(d)-(e), (4), (6) (2009-10).  That statutory overhaul was known as the "Truth in Automobile Insurance Law" (TAIL).  *Brey*, 400 Wis. 2d 417, ¶22.

> This expanded UIM coverage system was short-lived; in 2011, the legislature repealed or amended many of the 2009 changes.  Most pertinent, the legislature repealed the definition of "underinsured motor vehicle" in … § 632.32(2)(e) [(2009-10)], but retained the definition of "uninsured motor vehicle" in § 632.32(2)(g) [(2009-10)] as well as the definition of "underinsured motorist coverage" in § 632.32(2)(d) [(2009-10)].

*Brey*, 400 Wis. 2d 417, ¶23; *see also* 2011 Wis. Act 14; § 632.32(2)(d), (g) (2011-12).

¶19    In *Brey*, the issue was whether State Farm Mutual Automobile Insurance Company could limit UIM coverage to bodily injury that was sustained

---

[7] Given that our conclusion on this first issue is determinative, we need not address the parties' additional arguments regarding whether the Millers remained "legally entitled to recover" from the county and whether West Bend may stand in the shoes of governmental agents and employees for WIS. STAT. § 345.05(3) purposes.

by an insured. ***Brey***, 400 Wis. 2d 417, ¶1. Our supreme court concluded that State Farm's policy language, limiting UIM coverage, was consistent with WIS. STAT. § 632.32(2)(d) (2017-18). ***Brey***, 400 Wis. 2d 417, ¶2. In reaching this conclusion, the court relied on the legislative amendments to TAIL. The court explained that "[i]n repealing … § 632.32(2)(e)[(2009-10)]—the definition of 'underinsured motor vehicle'—the legislature did not broaden UIM coverage for tort victims, but rather increased coverage flexibility for insurers." ***Brey***, 400 Wis. 2d 417, ¶24. In other words, by repealing the statutory definition of "underinsured motor vehicle," the legislature "expanded insurers' options for contractually defining UIM coverage." ***Id.***, ¶25. The court further observed that the 2011 amendments "not only expanded insurers' contractual freedom by repealing the definitional requirements of … § 632.32(2)(e)[(2009-10)], they also narrowed the required scope of UIM coverage generally." ***Brey***, 400 Wis. 2d 417, ¶27. Accordingly, the 2011 amendments evinced a "'textually or contextually manifest' purpose to permit greater limitations on UIM coverage and expand insurer flexibility." ***Id.***

¶20 While the issue presented in ***Brey*** was not the same as in this case, our supreme court's discussion of the statutory limits on UIM coverage, generally, is certainly applicable here. ***Brey*** plainly states that the repeal of TAIL, which defined the term "underinsured motor vehicle" and required mandatory UIM coverage, among other things, resulted in insurers' expanded "contractual freedom" to define the scope of UIM coverage within insurance policies. ***Id.***, ¶¶23-27. Accordingly, ***Brey*** signaled our supreme court's approval of West Bend's freedom to contractually define the scope of UIM coverage within its insurance policies without running afoul of WIS. STAT. § 632.32.

¶21 On appeal, however, the Millers advance several arguments for why the policy's definition of "underinsured motor vehicle" violates the law. First, the Millers declare that the **Brey** court's analysis firmly indicates a legislative intent to allow insurers to adopt one of two definitions, not create their own. The Millers cite the **Brey** court's discussion that the repeal of TAIL meant a return to "the definition of underinsured motorist coverage … prior to [the law] being revised by 2009 Wisconsin Act 28" and that "the repeal of the definition of 'underinsured motor vehicle' expanded rather than constrained insurers' definitional choices—allowing insurers to utilize either the 'limits of coverage' or 'limits of damages' definition."[8] **Brey**, 400 Wis. 2d 417, ¶¶25-26 (citation omitted). Accordingly, the Millers claim that post-TAIL, insurance policies must use one or the other of those two definitions.

¶22 We disagree that our supreme court's decision in **Brey** includes that mandate. **Brey** did not hold that limits of coverage or limits of damages were the *only* available definitions of underinsured motor vehicle. The **Brey** court simply acknowledged that prior decisions, before TAIL, had addressed UIM coverage in this manner, and the court stated that adopting the insured's interpretation "would preclude insurers … from utilizing the 'limits of damages' definition." **Id.**, ¶26.

---

[8] As our supreme court explained in **Brey**, prior to 2009,

> insurers had used one of two definitions: in some policies, "underinsured motor vehicle" was "defined as one insured by a policy with liability limits less than the insured's UIM coverage limits (limits of coverage)." In others, it was defined "by comparison of the at-fault driver's liability limits with the damages sustained by the insured (limits of damages)."

**Brey v. State Farm Mut. Auto. Ins. Co.**, 2022 WI 7, ¶24, 400 Wis. 2d 417, 970 N.W.2d 1 (citations omitted).

11

Thus, far from *requiring* certain definitions, the court's discussion merely rejected an interpretation that prohibited the use of one definition.

¶23     Further, the Millers' quotation above fails to appreciate the second part of the sentence.   The ***Brey*** court stated: "[T]he repeal 'leaves [UIM] undefined in the statutes, *to be defined by each individual insurance policy*, as it was prior to 2009 Wisconsin Act 28.'"   ***Brey***, 400 Wis. 2d 417, ¶25 (emphasis added; citation omitted).   We agree with West Bend that "[n]othing in ***Brey*** require[s] UIM coverage to conform to either [definitional] format.   To the contrary, ***Brey*** concluded [that] the repeal of mandatory UIM [coverage] allowed insurers to define the coverage."

¶24     Next, the Millers engineer a number of statutory arguments asserting that the policy's definition violates WIS. STAT. § 632.32.  Essentially, the Millers argue that, despite the repeal of TAIL, § 632.32 continues to establish mandatory minimum requirements for UIM coverage.  In support of their position, the Millers cite § 632.32(2)(d) and (4m)(d) and claim that any UIM policy failing to satisfy these minimum requirements is void and unenforceable.

¶25     Initially, we emphasize that UIM coverage is no longer required to be provided by insurers.   *See* WIS. STAT. § 632.32(4)(a) (requiring uninsured motorist coverage and medical payments coverage, but not UIM coverage); § 632.32(4m)(a) (requiring an insurer to provide, "only one time," "written notice of the availability of underinsured motorist coverage, including a brief description of the coverage").  Because UIM coverage is no longer mandatory, West Bend's contractual decision not to provide UIM coverage for accidents with government-owned vehicles does not violate § 632.32.

¶26 We move next to the Millers' argument that WIS. STAT. § 632.32(2)(d) "establishes the mandatory minimum requirements for UIM coverage." Section 632.32(2)(d) provides: "'Underinsured motorist coverage' means coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured motor vehicles." As the Millers recognize, this is the same definition of UIM coverage applicable under TAIL. *See* § 632.32(2)(d) (2009-10). Importantly, however, and as noted above, § 632.32 no longer defines "underinsured *motor vehicle*," and the statute does not otherwise require a particular definition of that term.[9] *Compare* § 632.32(2)(e), (4), (6) (2009-10) *with* § 632.32(2), (4), (4m), (5), (6).

¶27 The Millers fail to outline what precise language in the current WIS. STAT. § 632.32(2)(d) West Bend has allegedly violated, except to argue that

---

[9] The Millers assert a plain language, statutory definition argument on this point. They claim that "[w]here a statute includes a term without an express definition, the legislature must intend courts to furnish the 'common, ordinary, and accepted' meaning." *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Accordingly," argue the Millers, "UIM insurers have no right to adopt any policy definition for 'underinsured motor vehicle' that violates the statutory meaning of the phrase as construed by Wisconsin courts."

As we addressed previously in this decision, *Brey* did not construe the term "underinsured motor vehicle" in a particular way or require the use of a particular definition. *See supra* ¶¶22-23. Thus, the Millers' contention that the phrase has been given a specific meaning by the courts is unsupported. Further, insurance policies are contracts, and, as such, a court's primary purpose in interpreting insurance policies "is to give effect to the intentions of the parties." *Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶11, 342 Wis. 2d 311, 818 N.W.2d 819. A court's role is not to rewrite clear language in an insurance policy "to bind an insurer to a risk which it did not contemplate and for which it was not paid." *See Paape v. Northern Assurance Co.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987). "When the terms of a policy are plain on their face, a court need not resort to either construction or case law to bolster its recognition of the policy's plain meaning." *Id.* Here, the policy's definition of "underinsured motor vehicle" clearly excludes government-owned motor vehicles, and absent a statute prohibiting that definition, we apply the policy as agreed to by the parties. *See id.*

§ 632.32(2)(d) "must be construed 'for the protection of' UIM insureds." (Formatting altered.) The Millers cite *State Farm Mutual Automobile Insurance Co. v. Gillette*, 2002 WI 31, ¶45, 251 Wis. 2d 561, 641 N.W.2d 662, for the proposition that "[t]he common law purpose of UIM coverage is to protect UIM insureds 'when an at-fault driver's liability insurance cannot fully compensate for the insured's damages.'" The Millers then claim that a conclusion that an insurer may define the scope of UIM coverage "fails this requirement because it would create UIM coverage purely for the benefit of insurers." However, absent both a statutory definition of "underinsured motor vehicle" and a developed argument as to how the policy's definition contravenes the general definition of UIM coverage in § 632.32(2)(d), we are not persuaded that a "common law purpose" and the current state statutes prohibit insurers from limiting the scope of UIM coverage as West Bend has done here.

¶28 The Millers' final statutory construction argument is that although "UIM coverage is not mandatory in all cases," once an insured opts to buy UIM coverage, WIS. STAT. § 632.32(4m)(d) sets a minimum amount of mandatory coverage. Section 632.32(4m)(d) provides that "[i]f an insured accepts underinsured motorist coverage, the insurer shall include the coverage in limits of at least $50,000 per person and $100,000 per accident." According to the Millers, because Miller's employer purchased a UIM policy, UIM coverage in all circumstances is mandatory under § 632.32(4m).

¶29 The Millers cite *Welin v. American Family Mutual Insurance Co.*, 2006 WI 81, 292 Wis. 2d 73, 717 N.W.2d 690, in support of the above proposition. In *Welin*—a case decided prior to TAIL—the tortfeasor's insurance policy had a $300,000 limit, which was insufficient to cover the damages for two people injured as a result of the tortfeasor's negligence, and the liability limit was

split between Welin and the tortfeasor's passenger. *Id.*, ¶¶2-4. Welin's UIM coverage was limited to $300,000 per person and per occurrence, and the policy defined an underinsured motor vehicle as one insured with bodily injury liability limits less than the UIM coverage limits of liability—i.e., a limits-to-limits definition. *Id.*, ¶2. Welin's damages exceeded the $250,000 she received, but the circuit court dismissed Welin's claim for UIM coverage because the UIM policy limits were equal to the tortfeasor's liability limits. *Id.*, ¶¶4, 6.

¶30 Our supreme court defined the issue as "whether the limits-to-limits definition of an underinsured motor vehicle functions as an impermissible reducing clause when applied to multiple claimants covered under different UIM policies." *Id.*, ¶28. The court concluded that the definition was an impermissible reducing clause, and it held that "a definition of an underinsured motor vehicle that compares the injured person's UIM limits to the limits of a tortfeasor's liability policy without regard to the amount the injured person actually receives from the tortfeasor's insurer is invalid under WIS. STAT. § 632.32 (4m) and (5)(i)." *Welin*, 292 Wis. 2d 73, ¶8. Thus, the court concluded that "[t]he definition contravenes the purpose of UIM coverage under [§] 632.32(4m) and functions as an impermissible reducing clause when a tortfeasor injures more than one person in a single occurrence and the injured persons are not insured under the same UIM policy." *Welin*, 292 Wis. 2d 73, ¶61.

¶31 The Millers assert that the policy's definition in this case is prohibited by *Welin* "because [the definition] fails to provide a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *See id.*, ¶35 (formatting altered). According to the Millers, "[t]he UIM policy definition [of] underinsured motor vehicle at issue in *Welin* functioned to reduce UIM coverage below the predetermined, fixed amount of coverage purchased by

the named insured," which "contravened the purpose of UIM coverage and was not for amounts paid by a legally responsible person to the named insured." The same result occurs in this case, explain the Millers, through the exclusion of government-owned motor vehicles from the definition of underinsured motor vehicles under the West Bend policy because the definition "functions to eliminate all UIM coverage under the policy even though the remaining policy limit after payments from all sources[] is over $250,000."[10]

¶32    We are not convinced that our supreme court's decision in *Welin* has any bearing on the result in this case because it is factually and materially distinguishable. The case before us does not involve injuries to more than one person, it does not involve a limits-to-limits comparison, the Millers received the full amount available to them from the county and its insurer, and the insurance policy at issue contains a definition of underinsured motor vehicle that does not include an initial grant of coverage. Further, *Welin* explained "that prior cases upholding definitions of an underinsured motor vehicle similar to the one in the instant case remain good law for the issues they reached," which "involved only one injured person who was paid the full amount of the tortfeasor's liability policy." *Id.*, ¶¶7, 62.

¶33    Accordingly, we are not persuaded that WIS. STAT. § 632.32(4m)(d)'s statutory minimum requirement of UIM coverage triggers *mandatory* UIM coverage in *all circumstances*. We agree with West Bend that "[j]ust because the insured purchased UIM coverage, it does not ipso facto mean

---

[10] According to the Millers, the policy's "definition [of] 'underinsured motor vehicle,' if ruled enforceable, eliminates all UIM coverage for the Millers, thereby denying the Millers a predetermined, fixed level of UIM coverage based on a $1,000,000 UIM policy limit."

UIM coverage is available no matter the circumstances. The coverage is subject to its terms and conditions, all of which must be satisfied for coverage to apply." *See Paape v. Northern Assurance Co.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987) ("In the absence of stated legislative policy to the contrary, the extent of liability of an insurance company is based upon the contract entered into between the parties and must be governed by its terms and conditions.").

¶34      The Millers also argue that the policy's definition "functions as an illegal reducing clause" because the *Welin* court stated that "[t]he definition of an underinsured motor vehicle is not listed under [WIS. STAT.] § 632.32(5)(i) as a permissible basis on which to reduce UIM limits." *See Welin*, 292 Wis. 2d 73, ¶44. We disagree that § 632.32(5)(i) is applicable to this appeal. As West Bend asserts, "[t]his is not a reducing clause case." The policy's definition does not operate to undo an initial grant of UIM coverage, like that addressed in *Welin*. Instead, the definition limits the initial grant of coverage. *See Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶22, 311 Wis. 2d 548, 751 N.W.2d 845 (explaining that a court first considers the initial grant of coverage, and "[i]f the court determines that the policy was not intended to cover the claims asserted, the inquiry ends"). Because there is no initial grant of coverage under the circumstances of this case, there is no UIM coverage to reduce.

¶35      Next, in asserting that West Bend's policy provides UIM coverage in this case, the Millers, as well as the circuit court,[11] rely on this court's decision in

---

[11] The circuit court stated that it found *State Farm Mutual Automobile Insurance Co. v. Hunt*, 2014 WI App 115, 358 Wis. 2d 379, 856 N.W.2d 633, "helpful" "for reasoning purposes," but the court acknowledged that "the law has changed" and that *Hunt* is not "controlling authority."

*Hunt*, a case involving strikingly similar facts. There, as in this case, the accident involved a snowplow owned by a county, the insurer's policy excluded government-owned vehicles from the definition of an underinsured motor vehicle, and the issue was whether the insureds could rely on UIM coverage beyond the statutory cap of $250,000. *Hunt*, 358 Wis. 2d 379, ¶¶1-2. As relevant here, we held that the insurer could not "exclude government vehicles in a manner that restricts underinsured motorist coverage as mandated by [WIS. STAT.] § 632.32 [(2009-10)]." *Hunt*, 358 Wis. 2d 379, ¶38. We explained that "the exclusion here in fact violates … § 632.32(4) [(2009-10)], which requires, in pertinent part, underinsured motorist coverage for 'every policy of insurance … with respect to any owned motor vehicle registered … in this state against loss resulting from liability imposed by law for bodily injury.'" *Hunt*, 358 Wis. 2d 379, ¶42.

¶36 *Hunt*, however, was decided based on TAIL provisions in effect from 2009 to 2011. Specifically, WIS. STAT. § 632.32(4)(a) (2009-10) "require[d] that underinsured motorist coverage appl[y] in all cases, and excluding coverage for government vehicles violate[d] that applicable law." *Hunt*, 358 Wis. 2d 379, ¶42. Thus, the holding in *Hunt* is inapplicable here because § 632.32 no longer mandates UIM coverage.

¶37 Nevertheless, the Millers assert that the *Hunt* "analysis" applies because "[i]mplicit in the *Hunt* decision is the notion that a policy excluding UIM coverage for government-owned vehicles did not actually provide [UIM] coverage." Thus, the Millers craft an argument, based on *Welin*, that because notice of UIM coverage is required under WIS. STAT. § 632.32(4m), the "notice statute [sets] a *minimum amount of UIM coverage once the insured buys a UIM policy*." *See Welin*, 292 Wis. 2d 73, ¶22. According to the Millers, "[b]ecause [Miller's employer] did buy a UIM policy, UIM coverage is mandatory," which is

18

why the *Hunt* analysis applies. We previously addressed in this decision the reasons why *Welin* is inapplicable under the circumstances of this case. *See supra* ¶¶32-34. Given that conclusion, there is no basis to consider the continued applicability of *Hunt*.

¶38 Finally, the Millers argue that the policy's definition of "underinsured motor vehicle" is arbitrary and creates an absurd result. The Millers contend that the policy's definition "arbitrarily excludes UIM coverage for motor vehicles that would qualify as 'motor vehicles' under" WIS. STAT. § 632.32(2)(at)[12] "without regard to whether such statutory 'motor vehicles' are actually 'underinsured' as construed under [§ 632.32], dictionary definitions, or any Wisconsin case law." Further, according to the Millers, the policy's "definition does not require that the governmental vehicle operator be entitled to immunity." Thus, the Millers reason that "the policy exclusion does not hinge on governmental immunity; it applies arbitrarily based solely on who owns the vehicle." (Formatting altered.)

¶39 We disagree that the policy's definition of "underinsured motor vehicle" is arbitrary and leads to an absurd result. Initially, we agree with West Bend that excluding government-owned vehicles "has a rational purpose as

---

[12] Under WIS. STAT. § 632.32(2)(at), "[m]otor vehicle" is defined as

> a self-propelled land motor vehicle designed for travel on public roads and subject to motor vehicle registration under [WIS. STAT.] ch. 341. A trailer or semitrailer that is designed for use with and connected to a motor vehicle shall be considered a single unit with the motor vehicle. "Motor vehicle" does not include farm tractors, well drillers, road machinery, or snowmobiles.

it dovetails with municipal liability limits." *See* WIS. STAT. § 345.05(3). As West Bend explains, "[a] claimant could have no expectation of recovery or legal entitlement to [UIM coverage] beyond the [statutory] liability cap." In other words, explains West Bend, "Wisconsin's statutory liability limitation is not the equivalent of a [c]ounty employee driver who lacks sufficient insurance coverage," and "it would be absurd to contravene … § 345.05 by making UIM coverage supplant it."

¶40    Further, whether the policy's definition is arbitrary is of no import. As addressed above, Wisconsin law no longer defines the term "underinsured motor vehicle," and, accordingly, our statutes do not prohibit insurers from contractually defining the scope of UIM coverage. Thus, any argument that the policy's definition is arbitrary is immaterial because the parties contracted for that result.

¶41    In conclusion, the circuit court erred by refusing to apply the plain language of West Bend's policy. West Bend was free to contractually define the scope of UIM coverage within its policy. The policy's definition of "underinsured motor vehicle" did not include government-owned vehicles. There is no question that the vehicle at issue was government-owned; therefore, there was no initial grant of UIM coverage for the Millers' damages under the policy. We therefore reverse and remand with directions that the court grant West Bend's summary judgment motion and dismiss West Bend from this case.

        *By the Court.*—Judgment reversed and cause remanded with directions.

        Recommended for publication in the official reports.